## HOLLEY v. GLOVER.

1. DOWER—TENANTS IN COMMON—PARTITION.—Where a husband acquires title to land as a tenant in common with others, his seizin is subject to the paramount right of his co-tenants to demand partition, and therefore his wife's dower, attaching to such seizin, is subordinate to such paramount right, which, when enforced by a sale under decree of the court, defeats her inchoate right of dower in the land itself, even though she was not a party to the action.

2. IBID.—IBID.—IBID.—Where a wife has an inchoate right of dower in her husband's share of land held by him and others as tenants in common, and he conveys his interest to another, after which the land is sold for partition under decree of court in an action to which the husband was a party but not the wife, the dower is defeated—not, however, because the husband in such case was not the wife's representative, but by the exercise of this right of partition, which was paramount to the right of dower in the interest held by the husband and by him transferred. And to such an action this wife was not a necessary party.

3. PARTITION—COURT OF EQUITY.—The long established rule under which Courts of Equity have exercised the power of selling lands of tenants in common, however acquired, under proceedings for partition, approved and affirmed.

Before IZLAR, J., Aiken, March, 1891.

These were sixteen separate actions brought by the plaintiff, Elizabeth Holley, against Stella A. Glover, and separately against fifteen other defendants. The sixteen cases were all heard together on the following agreed statement:

It is agreed by counsel representing the parties in the sixteen actions above stated, that said actions be tried by the court in place of a jury upon the following statement of facts and the pleadings:

1. That previous to the year 1839, William H. Carey and Alfred Holley (who was the husband of the demandant in said actions) were the owners as tenants in common of all that tract of land now situate in the County of Aiken, but then in the Districts of Edgefield and Barnwell, containing five thousand acres, more or less, known as the Hollow Creek tract, and including the va-

rious tracts described in the respective complaints in the foregoing actions.

2. That said Wm. H. Carey having died, his son, John L. Carey, by his next friend, D. J. Walker, instituted a suit in the Court of Equity for the District of Edgefield against the other heirs at law of said Wm. H. Carey, deceased, and Alfred Holley and Wise Holley for the partition of the said Hollow Creek land. That in said suit a writ in partition was duly issued to commissioners pursuant to an order of the court and the statute in such case made and provided, who returned that it was best for the interest of all parties concerned that the land should be sold and the proceeds divided as justice could not be done by a division in kind. That upon said return one of the chancellors of the court, in term time, by regular decree in said action for partition, ordered and directed that said tract of land should be sold by the commissioner of the court and the proceeds divided between the parties according to their respective rights, which was stated in said decree; that pursuant to said decree, the commissioner of the court, S. S. Tompkins, Esq., after due advertisement, at public outcry on salesday in January, 1849, sold said tract of land to John Holley for $4,175, and executed a deed of conveyance to him for the same; that said commissioner, after receiving said purchase money, divided and paid out the same among the parties to said suit, pursuant to the provisions of said decree, and that said sale to said John Holley was duly confirmed by the court.

3. That the defendants in the aforesaid actions for dower now hold the various tracts of land described in the complaints in said actions from parties who trace their titles back to John Holley, who purchased from the commissioner as aforesaid.

4. That on the 5th day of March, 1841, Alfred Holley, by his deed of conveyance, conveyed to Wise Holley his undivided one-half interest in the Hollow Creek tract of land aforesaid, which said deed was duly executed and recorded at Barnwell Court House.

5. That on the 6th of March, 1842, the sheriff of Barnwell District, in the case of Elisha Carson against Alfred Holley, sold the said Hollow Creek tract of land under judgments obtained prior to 5th day of March, 1841, and the same was bid off by

Wise Holley for $30, but no deed to the same from the sheriff appears on the record.

6. That the demandant, Elizabeth Holley, was not a party to the proceedings in the partition heretofore mentioned, and received no portion or share of the proceeds of sale of said premises, nor was any provision whatever made by the court in said proceedings for the assessment of the value or protection of the inchoate right of dower of said Elizabeth Holley.

7. That said proceedings in partition mentioned in paragraph two (2) hereof were instituted subsequently to the execution of the conveyance from Alfred Holley to Wise Holley, heretofore mentioned, and subsequently to the sale of said Hollow Creek tract of land by the sheriff of Barnwell District under the execution aforesaid in favor of Elisha Carson against Alfred Holley.

8. It is further agreed and admitted that Alfred Holley, the husband of the demandant herein, died on the fourteenth (14th) day of February, A. D. (1881) eighteen hundred and eighty-one.

NOTE.—Carey and Holley became tenants in common, purchased jointly and by deed to them as tenants in common.

The Circuit decree, omitting its repetition of the statement, was as follows:

Mr. Scribner, in his work on Dower, vol. 1, page 328, says: The Statutes of most, if not all, the States provide for the sale of lands held in common, where, upon proceedings for partition, it is ascertained that a division cannot be made without serious detriment to the estate. In such cases the money arising from the sale is brought into court and distributed to the several tenants in common in proportion to their respective interest in the common property. From these statute regulations has sprung a question of great interest and importance, namely, whether a sale made in conformity thereto operates to divest the contingent right of dower of the wife of a co-tenant, and to pass the entire estate absolutely to the purchaser, and if so, whether, for that reason, it is proper that the court, under whose direction the sale is made, should require a portion of the husband's share of the proceeds of the sale to be invested for her benefit in case she should survive him, and her right thus becomes absolute. This question of

"great interest and importance" is the one presented in these cases and upon which we are now required to pass.

It is contended that there was no statute authorizing the sale of lands, under the circumstances of this case, for partition; that the act of 1791 is only applicable to the settlement of intestate estates, and that the long established practice of the Court of Equity, derived from an assumed jurisdiction in such cases, should not be allowed to override and defeat the rights of the parties. *Pell* v. *Ball*, 1 Rich. Eq., 387, is authority for the doctrine that the jurisdiction of the Court of Equity to sell lands for the purpose of partition against the consent of a party is not confined to the case of intestate estates. The reason given by Chancellor Harper, in support of this doctrine, seems to us sufficient to sustain the conclusion reached. It does not seem to us to be an unwarranted extension of the provisions of the act of 1791, so as to include other than intestates' estates held in common. At any rate, we consider the question settled.

Again, it is contended that even if the Court of Equity has power to direct a sale for the purpose of partition, that only those persons who are parties to the proceedings are bound thereby. To support this proposition, section 2, of the act of 32 H. VIII., ch. 32, is relied on by the plaintiff herein. It is argued that the Court of Equity, in the exercise of its jurisdiction in directing sales of real estate for the purpose of partition among joint tenants and tenants in common, cannot prejudice the rights of those not parties to the proceedings. That it derives its authority to make compulsory partition alone from the statutes of 31 H. VIII., ch. 1, and 32 H. VIII., ch. 32, and that section 2 of the act of 32 H. VIII., ch. 32, is applicable to all cases of partition among joint tenants and tenants in common, whether made in kind or by sale under the extended jurisdiction of the Court of Equity by reason of the act of 1791. This section reads: "*Provided, always,* That no partition or severance hereinafter to be made by force of this act be prejudicial or hurtful to any person or persons, their heirs or successors, other than such which be parties unto said partition, their executors or assigns."

Admitting the view contended for to be correct, we do not think this proviso applicable to the present case. The statute of

31 H. VIII., ch. 1, relates to joint tenancies and tenants in common (2 St., 471). This statute was extended by 32 H. VIII., ch. 32, to joint tenants for term of life or years (2 St., 474) By reference to these statutes, it will be seen that the statute of 31 H. VIII., ch. 1, did not contain the above *proviso.* It is annexed only to the other act. Let us notice the language of this *proviso.* It is "that no partition or severance hereinafter to be made by force of this act." What act? Certainly the act of 32 H. VIII., ch. 32, which, as we have seen, applies only to "joint tenants for terms of life or years." It will hardly be questioned that this is a wise provision in regard to tenancies of this nature.

This brings us to the main question in the case. In the outset it is necessary to ascertain, if we can, what is the nature and quality of this right denominated the wife's inchoate right of dower. "It is difficult," says Mr. Scribner (2 Scrib. Dow., 5), "to state with precision the nature and quality of inchoate dower interest when considered as a right of property." It is "a right attaching by implication of law, which although it may possibly never be called into effect (as when the wife dies in the life time of the husband), yet from the moment that the fact of marriage and of seizin have occurred is so fixed on the land as to become a title paramount to that of any other person claiming under the husband by a subsequent act." Parke Dow., 237; *Cunningham* v. *Shannon,* 4 Rich. Eq., 140. It is a substantial right possessing in contemplation of law attributes of property, and to be estimated and valued as such." (2 Scrib. Dower, 5.) It is not a lien. *Shell* v. *Duncan,* 31 S. C., 565. "After this right has once attached, it is held by the wife entirely independent of the husband, and it cannot be affected by any act or omission on his part." *Shell* v. *Duncan, supra,* 566, and cases there cited.

Now, while Carey and Alfred Holley held these lands as tenants in common, what was the situation of the parties? Mrs. Alfred Holley had a contingent right of dower in the one undivided moiety thereof. subject to the paramount right of Carey to compel partition between her husband and himself. Had a voluntary or involuntary partition of said lands in kind been made, then it is clear that the inchoate right of dower of Mrs. Alfred Holley would have been transferred immediately to the portion

allotted to her husband; and had he conveyed after partition his share to another, without the renunciation by his wife of her dower, according to the statute, his grantee would have taken the land subject to, and burdened with, the contingent right of dower of Mrs. Holley; and when this right became consummate by the death of her husband, she could have recovered her dower interest therein.

So when Alfred Holley conveyed his undivided interest therein to Wise Holley, he took it subject to and encumbered with the inchoate right of dower of Mrs. Alfred Holley, she not having renounced this right according to the statutory mode provided. The seizin of Alfred Holley in these lands was broken, and ceased when he conveyed his undivided interest therein to Wise Holley. This transfer created no priority of estate between Wise Holley and Elizabeth Holley, the wife of his grantor, respecting her right of dower in the lands conveyed. For, as we understand the rule, the wife is in privy of estate with her husband only until the right of dower attaches; her interest is not only independent of him, but against him. In all transactions subsequent to the occurrence of marriage and seizin, there is no privity of the wife with her husband respecting her dower. If this be so, how can it be said that there is privity respecting her dower between the wife and the husband's grantee —a mere stranger?

Wise Holley's seizin, however, while burdened with the contingent right of dower of Mrs. Elizabeth Holley, was also burdened with Carey's paramount right of compulsory partition. The question is, therefore, presented, was the inchoate right of dower of Elizabeth Holley in these lands divested and defeated by the *compulsory sale* for partition and division ordered by the Court of Equity in an action to which she was not a party, but in all other respects regular? This question has never been directly decided in this State, so far as we are informed or advised. Now, what is the nature and force of this paramount right to compel partition? Does it involve anything more than that this right shall not be abridged or taken away by the contingent right of dower in the wife of a tenant in common? Or is it so potent as to destroy altogether the wife's contingent right of dower in case of its exercise?

There is no doubt that if actual partition is made, the wife's right of dower will attach to the share allotted in severalty to her husband. This result follows as a matter of course, without any decree or order of the court, and without the wife being a party to the proceeding in partition. Hence, when actual partition is made, the paramount right to compel it does not defeat the subordinate right of dower, and the paramount right in such case, it would seem, involves nothing more than that its exercise should not be abridged or taken away by the subordinate right. Is the result different when the property is *sold* by order of the Court of Equity for partition and division of the proceeds? Here we enter upon debateable ground. It, therefore, becomes necessary to review at some length the cases bearing upon this difficult and important question, and to deduce therefrom a conclusion in consonance with the principles of law applicable to this highly favored right.

[Here the learned judge cited, quoted at length, and reviewed the following authorities: Jackson *v.* Edwards, 7 Paige, 386; Mathews *v.* Mathews, 1 Edw. Ch., 565; Lee *v.* Lindell, 22 Mo., 202; s. c. 64 Am. Dec., 262; Weaver *v.* Gregg, 6 Ohio St., 547; s. c. 67 Am. Dec., 355; Freem. Cot. & Part., § 474; 1 Scrib. Dow., 328–341; Keckeley *v.* Moore, 2 Strob. Eq., 21; Polk *v.* Sumter, 2 Strob., 81; Jeter *v.* Glenn, 9 Rich., 380; Commissioner *v.* Smith, *Ibid.*, 515; Bolivar *v.* Zeigler, 9 S. C., 287; Rorer Jud. Sales, § 150.]

It, therefore. seems to us that not only reason and public policy, but the clear weight of authority, is on the side and in favor of the rule. that where lands are sold under a decree of the Court of Equity for partition, the realty is converted into personalty, and thereby the dower interests of the wives of the co-tenants are extinguished and destroyed, and the purchaser at such sale takes a title free from any defect or encumbrance as to such dower rights.

But in the present case it appears that Alfred Holley conveyed his undivided interest in said premises to Wise Holley before the sale for partition of said land was made, and that his wife, Elizabeth, the present plaintiff, did not then, nor did she during the life-time of her husband, renounce her right of dower in the premises so sold to Wise Holley, as required by the statute in such

case provided. This state of facts presents another question of equal importance and difficulty. The authorities above referred to arise out of cases in which the husband was still a co-tenant when the sale for partition was ordered. In these cases the husband, it may be claimed, represented his wife's inchoate right of dower; for in such cases the practice has always been in the distributing the proceeds of sale to pay to the husband, he being the sole representative of the estate. But, in the present case, although Alfred Holley was a party, he did not represent the estate; he had no share in the proceeds of sale. When the proceedings for partition were instituted, he was not the owner in fee of one undivided moiety of these lands, with a wife having a contingent right of dower, for he had voluntarily parted with his interest to another prior to such proceeding. In the cases above discussed, the seizin of the husband had been divested by the act of the law; in the present case the husband's seizin had been divested solely by his own act.

Mr. Freeman, in his work on Co-Tenancy and Partition, § 475, in discussing this question, says: "As it was clear that the act of the husband could not defeat the wife's right of dower, it was thought that the subsequent partition, to which she was not a party, and in which her estate had no representative, must be equally powerless to prejudice her interests." In support of the text, Mr. Freeman cites the case of *Verry* v. *Robinson*, 25 Ind., 19; s. c. 87 Am. Dec., 346. By the sale of Alfred to Wise, the title of Alfred, which, to use the language of Mr. Justice Elliott in *Verry* v. *Robinson*, *supra*, "was directly united with the contingent right of the wife growing out of the marriage relations under the law, became severed from it. The title was no longer a unit. The estate of the husband, out of which sprung the claim of the wife, became divested and passed into the hands of a stranger, not an absolute and unencumbered fee, but subject to the contingent claim of the wife, depending, however, upon the then uncertain contingency that she should survive her husband."

Alfred was seized of an unconditional and unencumbered fee in one undivided moiety of the Hollow Creek tract of land. The contingent right of his wife was a mere incident under the law of that seizin, and though the entire fee was in the husband, he could

not sell the interest of the wife unless she voluntarily joined in the conveyance. The wife of Alfred did not join in the conveyance of Alfred to Wise, therefore Wise's purchase was subject to the contingent right of Mrs. Elizabeth Holley, the wife of Alfred. By this purchase Wise did not acquire a title to that right. Alfred did not own it, consequently could not sell and convey it; therefore Wise's title was subject to it. As was said by Mr. Justice McIver in Shell *v.* Duncan, *supra*, in answering the question, what is the right. title, and interest which a married man has in land of which he is seized during coverture? "It certainly is not such an absolute, unqualified interest as would enable him to alienate it, free from the claim of dower, either by deed or devise, but his alienation is always subject to the wife's right of dower. which can only be released or extinguished by her own act. Nothing that the husband may do can in any way affect it. From this it follows that when the right, title, and interest of the husband is sold, either directly by himself or through the medium of an officer of the law, the purchaser takes no more than what was sold— the right, title, and interest of the husband, which does not include the dower interest, and hence the purchaser must take his title subject to the wife's right of dower."

In the suit for partition instituted by John L. Carey, Wise Holley only represented the interest purchased by him, and no more, and no other, and the sale of the premises, so far as his interest was concerned, could not invest John Holley, the purchaser at said sale, with any better title or greater interest than was held by Wise, and which he represented in that suit. And, as we have already seen, Alfred, although a party, had no interest in the premises, and could not, under the circumstances, represent his wife in said suit.

It is apparent that there is a very material difference between the case at the bar and the cases of *Weaver* v. *Gregg* and *Lee* v. *Lindell.* In the cases of Weaver *v.* Gregg and Lee *v.* Lindell, the seizin of the husband was divested by the act of the law at the time of the sale under the decree for partition, and the husband was a party to the proceeding and represented his own title, which was then directly united with the contingent right of the wife. In the present case the seizin of the husband was divested

by his own voluntary act at a period long before the suit for partition was instituted, and the husband, although a party to the proceeding, had no title then directly united with the contingent right of the wife—the title and the contingent right having been previously severed by the voluntary sale of the husband.

We therefore conclude that Wise Holley's purchase of said premises was subject to the inchoate right of dower of Elizabeth Holley, which was not extinguished or destroyed by the sale for partition made under the decree of the Court of Equity in the suit instituted therein by John L. Carey, she not being a party to said proceedings; that John Holley, the purchaser at said sale, also took his title to said premises subject to the inchoate right of dower of Elizabeth Holley; and that said inchoate right having become consummate by the death of her husband, Alfred Holley, she is entitled to her dower in said premises.

It is therefore ordered and adjudged, that Elizabeth Holley, plaintiff, recover against the several defendants, in each of the above entitled actions, her dower in the several tracts or parcels of land mentioned and described in the respective complaints, and that a writ in dower in each of the said actions do issue out of and under the seal of this court in the usual form of words, and according to the rules and practice of this court, directed to fit and proper persons as commissioners, commanding them, or a majority of them, to admeasure and mete out to the plaintiff her dower in the lands described in the several and respective complaints. and that the costs of said actions and expenses of said admeasurement be paid by the defendants respectively.

Defendants appealed.

*Messrs. Henderson Bros.*, for appellants.

*Messrs. J. G. Evans* and *E. S. Hammond*, contra.

July 14, 1892. The opinion of the court was delivered by MR. CHIEF JUSTICE MCIVER. All the cases named in the title were actions for dower, and as they all grew out of the same state of facts, and rest upon the same principles of law, they were heard together both on the Circuit and in this court, and will

therefore be considered together. By agreement the cases were heard upon the pleadings and an agreed statements of facts, set out in the "Case," by the court without a jury. The plaintiff, as the widow of Alfred Holley, claims dower out of the several parcels of land in the possession of the several defendants in the above stated cases, which several parcels originally constituted a single tract of land known as the Hollow Creek land. From the "agreed statement of facts," which should be incorporated in the report of this case, it appears that some time prior to the year 1839, the said Alfred Holley and one William H. Carey purchased jointly the Hollow Creek land, and the same was conveyed to them as tenants in common, and on the 5th of March, 1841, Alfred Holley conveyed his undivided one-half interest to Wise Holley. Subsequently, W. H. Carey having died, his son, John L. Carey, instituted proceedings in the Court of Equity against the other heirs at law of W. H. Carey, together with Alfred Holley and Wise Holley, for the partition of said land, which resulted in a sale of said land under the orders of said court. At such sale one John Holley became the purchaser, and having paid the purchase money, received titles from the commissioner in equity, and the defendants in the several cases above stated claim under the said John Holley. The purchase money was divided amongst the several parties to the proceedings in pursuance of the provisions of the decree of the court under which the sale was made, but the plaintiff herein was not a party to the proceedings, and neither received any portion of the proceeds of the sale, nor was there any provision made for the protection of her inchoate right of dower.

Alfred Holley, the husband of plaintiff, having died in February, 1881, these actions were commenced (when, is not stated) by the plaintiff to recover her dower in the several tracts held by the several defendants. The Circuit Judge held that while a sale for partition would bar the contingent or inchoate right of dower of the wife of one of several tenants in common under proceedings to which he was a party, though the wife was not a party, yet in this case, inasmuch as Alfred Holley had sold and conveyed to Wise Holley his undivided interest in said land before the proceedings for partition were instituted, the plaintiff

was not barred of such right, because although Alfred Holley as
well as Wise Holley were parties to the partition proceedings,
yet neither, nor both of them together, represented the rights
and interests of the plaintiff in such proceedings.   He therefore
rendered judgment in favor of the plaintiff in each of said cases.
From these judgments the several defendants appeal upon the
several grounds set out in the record; and the plaintiff, accord-
ing to the proper practice, gives notice that if the Supreme
Court should find itself unable to sustain the judgments appealed
from upon the ground taken by the Circuit Judge, the plaintiff
will ask this court to sustain said judgments upon other grounds
likewise set out in the record.

   These various grounds raise substantially the following ques-
tions: 1st. Whether the wife of one tenant in common can be
barred of her inchoate right of dower, by a sale for partition
under proceedings instituted by another tenant in common against
her husband and the other co-tenants, but to which the wife was
not a party.   2nd. If so, whether the same rule would apply
where the husband, though made a party to the proceedings for
partition, had previously conveyed his undivided interest to a
third person who was also made a party.   3rd. Whether the
Circuit Judge erred in finding as matter of fact that William H.
Carey died testate.   4th. If not, whether the former Court of
Equity had the power to sell lands of a testator for partition
amongst those entitled thereto; and if so, whether the inchoate
right of dower of the wife of one of the tenants in common would
be barred by such sale under a proceeding to which she was not
a party.

   As to the first question, we are of opinion that, while the wife
of one of several tenants in common has an inchoate right of
dower in her husband's portion of the real estate held in
common, yet such right is subordinate to the paramount
right of the other tenants in common to have partition of
the common property in any of the modes by which such parti-
tion may be lawfully made.   Hence if a sale for partition be-
comes necessary, the wife's inchoate right of dower in the land is
barred, even though she is not a party to the proceedings for
partition; and the purchaser at such sale takes his title disen-

cumbered of such subordinate right of dower. As is said in 1 Washb. Real Prop., book I., chap. 7, sec. 2, par. 10, page 185, of 3rd edit.: "The wife of a tenant in common holds her inchoate right of dower so completely subject to the incidents of such an estate, that she not only takes her dower out of such part only of the common estate as shall have been set (off) to her husband in partition, but if, by law, the entire estate should be sold in order to effect a partition, she loses by such sale all claim to the land, although no party to such proceedings." Whether in such a case some provision should be made for the protection of the wife's inchoate right of dower, in the event it should afterwards become absolute out of the husband's share of the proceeds of the sale, is not a matter now before us, and will not therefore be considered.

So far as our experience extends, this rule has always been recognized in this State, and we are not informed that it was ever before questioned. The reason of this rule is this: the right of the other co-tenants to demand partition being paramount to the inchoate right of dower in the wife of any one of the co-tenants, whenever the paramount right is exercised, the subordinate right cannot properly be allowed to interfere with or abridge the full enjoyment of the paramount right. Inasmuch as the inchoate right of dower springs out of, and is necessarily dependent upon, the concurrence of marriage and seizin of the husband during coverture, it must necessarily depend upon and be qualified by the nature of such seizin. If, therefore, the nature of the husband's seizin be such as will not support the claim of dower—as, for example, the husband be seized as trustee—it is competent for the defendant in dower to show such defect in seizin as a defence to the claim of dower. See what is said in *Whitmire* v. *Wright*, 22 S. C., at page 451, commenting on the case of *Gayle* v. *Price*, 5 Rich., 525.

So also the husband's seizin may be shown to be subject to the lien of a purchase money mortgage, and therefore not of such a character as will be sufficient to support the claim of dower as against such paramount right. *Crafts* v. *Crafts*, 2 McCord, 54. And the same doctrine applies where the inchoate right of dower is subordinate to the lien of a judgment recovered before the

marriage. *Jones* v. *Miller*, 17 S. C., 380. Again, the rule is well settled that while a judgment against one of several tenants in common is a lien upon the undivided interest of such tenant in common, under which such undivided interest may be levied on and sold, yet such encumbrance is subordinate to the paramount right of the other tenants in common to demand partition, and if a sale of the undivided property is made for that purpose, the purchaser takes his title freed and discharged from such subordinate encumbrance on the share of the judgment debtor, and the creditor is remitted to his debtor's share of the proceeds of the sale, even though the judgment creditor is not a party to the proceedings for partition. *Keckeley* v. *Moore*, 2 Strob. Eq., 21; *Riley* v. *Gaines*, 14 S. C., 454; *Ketchin* v. *Patrick*, 32 S. C., 443. See, also, *Shiell* v. *Sloan*, 22 S. C., 157.

Now, while these are cases of liens or charges upon the common property, or rather upon the interests of one or more of the tenants in common, and while the inchoate right of dower may not, properly speaking, be a lien, yet the principle upon which they rest is applicable here, to wit, that the enforcement of a paramount right must not be interfered with or abridged by persons holding subordinate rights, whatever be their character. Hence, as the inchoate right of dower arises out of, and is dependent upon, the nature of the husband's seizin, such inchoate right must necessarily be affected with any infirmities of such seizin, and be qualified by any paramount right, subject to which it has been acquired; and where, as in this case, the husband's seizin was qualified by and subject to the paramount right of the other co-tenants to demand partition, the plaintiff's inchoate right of dower, growing out of and dependent upon such seizin, was subject to the same qualification. When, therefore, the seizin of the husband was divested by the exercise of the paramount right of the other co tenants to demand partition, the inchoate right of dower was likewise destroyed, so far at least as the land was concerned, and the plaintiff was no more a necessary party for that purpose than is a judgment creditor of one of several tenants in common, in case of a sale of the common property for partition. *Keckeley* v. *Moore, supra,* where, as pointed out in the Circuit

27—36

decree, the point here involved, though not discussed, was practically decided.

The second question involves an inquiry as to the effect of the sale by Alfred Holley to Wise Holley of his undivided one half of the common property prior to the institution of the proceedings for partition, under which the land was sold to John Holley. It seems to us that the conveyance to Wise Holley placed him in the shoes of Alfred Holley, invested him with the same seizin, subject to the same qualifications, with which his grantor, Alfred Holley, had previously been invested, and made him a tenant in common with the other joint owners of the land. When, therefore, such seizin was divested by the sale for partition, the effect, so far as any subordinate right dependent upon such seizin was concerned, was the same as if the title and such seizin had remained in Alfred Holley. When the basis upon which the subordinate right of dower rested, was destroyed by the exercise of a right paramount to the inchoate right of dower, such right necessarily fell with it, and could not be asserted against one claiming under a right paramount to it. We are therefore unable to see how the conveyance by Alfred Holley to Wise Holley could affect the question which we are called upon to determine.

The view taken by the Circuit Judge, that by reason of such sale the plaintiff's inchoate right of dower was not sufficiently represented in the proceedings for partition, does not seem to us to be sound, for we do not think it is a question of representation at all. If Alfred Holley had never sold and conveyed his undivided interest to Wise Holley, we would not be disposed to hold that the plaintiff's inchoate right of dower was barred by the sale for partition, because, though she was not a party to the partition proceedings, yet her interest was represented therein by her husband, who was a party. On the contrary, our view is that such inchoate right of dower was defeated by the exercise of a right paramount to it; practically that such inchoate right of dower in her husband's share of the common property was contingent upon the non-exercise of the paramount right to demand partition by a sale of the common property; but when such paramount right was exercised, the contingency upon which such sub-

ordinate inchoate right of dower rested could never happen, and
hence it could never afterwards become absolute. Indeed, it
would be anomalous to hold that the purchaser at a sale made
under the exercise of a paramount right, should take his title
subject to one claiming under a subordinate right. Under this
view we do not see how it is possible that the transfer by Alfred
Holley of his interest to Wise Holley prior to the proceedings
for partition can affect the question; nor do we see any necessity
for making the plaintiff a party to the partition proceedings, for
she then had no such interest in the property sought to be par-
titioned as rendered her a necessary party, in any sense of those
terms, and since the sale she never could have any such interest.

The third question, under the view which we shall take of the
fourth, becomes wholly unimportant, and as it is a mere question
of fact, will not be considered.

The fourth question has been so fully and satisfactorily dis-
cussed by the Circuit Judge in his decree (which should be in-
corporated in the report of this case), that we find it very
difficult to add anything to what is there so well said.
It is there shown that the power of the former Court of
Equity to order a sale of land for partition, owned by several
tenants in common, either as distributees of an intestate's estate
or otherwise, is not derived from, or dependent upon, the provi-
sions of the act of 1791, but existed and was exercised long be-
fore the passage of that act, an instance of which will be found
in the case of *Dinckle* v. *Timrod*, 1 DeSaus., 109, decided in
1784, seven years before the passage of the act of 1791. This
was expressly decided in the case of *Pell* v. *Ball*, 1 Rich. Eq.,
361, and the doctrine was recognized in the subsequent cases of
*Steedman* v. *Weeks*, 2 Strob. Eq., 145, and *Gibson* v. *Marshall*,
5 Rich. Eq., 254. While, therefore, it may be true that the
Court of Common Pleas, deriving its power in this respect only
from the act of 1791, can only order a sale for partition in cases
of intestacy, as has been held in the cases of *Crompton* v. *Ulmer*,
2 Nott & McC., 429; *Spann* ads. *Blocker*, *Ibid.*, 593; and
*Barns* v. *Branch*, 3 McCord, 19, yet these decisions cannot
affect, and do not purport to question, the long established, and as
we may say the universally recognized, powers of the Court of

Equity in this respect, under which, as is said by Harper, Ch., in *Pell* v. *Ball, supra:* "Titles have accrued and money has been paid and invested; thus involving perhaps the titles of a large portion of the property of the country." We would not feel at liberty, at this late day, to disturb or even question what may be called a rule of property so long established, even if we entertained much graver doubts than we do of the authority of the rule.

We concur, therefore, in the conclusion reached by the Circuit Judge as to this matter : that the power of the former Court of Equity to order a sale for partition is not confined to cases of intestacy, and that the inchoate right of dower of the wife of one of the several tenants in common is defeated by such a sale, even though such wife be not a party to the proceedings for partition. But as we differ with the Circuit Judge as to the effect of the transfer of Alfred Holley's interest to Wise Holley, as we have hereinbefore indicated, the judgments below must be reversed.

The judgment of this court is, that the judgment of the Circuit Court, in each of the cases stated in the title, be reversed, and that the complaints therein be dismissed.