# Richmond.

STRAYER v. LONG.

JANUARY 9th, 1890.

1. POSTNUPTIAL SETTLEMENTS—*Consideration—Dower—Fraud—Creditors—Recordation.*—Relinquishment of dower, to the extent of its value, is sufficient consideration for the postnuptial settlement as against husband's existing creditors; and where made before the relinquishment, no distinct proof of a previous agreement is required. Though made fraudulently as to her husband's creditors, the fraud will not be imputed to her. But it must be duly recorded, else it is void as to husband's creditors, without notice, whose claims accrued after its execution and before its admission to record.

2. IDEM—*Present value of dower.*—The rule for computing present value of wife's contingent right of dower is to ascertain the wife's expectation of life and that of the joint lives of husband and wife, and from the present value of an annuity, payable during wife's life, deduct the present value of an annuity payable during their joint lives.

Appeal from decree of circuit court of Shenandoah county, rendered September 4, 1885, in the chancery cause of M. Long, &c., against Joseph B. Strayer and Fannie B. Strayer, his wife, and others. The decree was adverse to Mrs. Strayer, and she appealed. Opinion states the case.

*W. W. & B. T. Crump,* for the appellant.

*Holmes Conrad* and *W. L. Walton,* for the appellees.

LACY, J., delivered the opinion of the court.

This case has been several times before this court, and the decrees of the circuit court of Shenandoah reversed, and the case remanded, for various causes. In its origin the case is a controversy on the part of the creditors of the appellant, Joseph B. Strayer, to annul, as voluntary and fraudulent, a deed of settlement made by him and executed on the 12th of June, 1875, settling upon his wife and children his Strickler farm, in consideration of her relinquishing her contingent right of dower in his other lands, not then sold. The lands of the settler were then worth $36,915 50. The debts amounted to $12,584 50, from which $4,000 was subsequently deducted, by transfer from this suit to the *Kagey* v. *Kagey* suit, which was a suit to sell the Kagey land, to pay the unpaid purchase money, which left about $8,000 of debts. The deed conveyed, by the highest estimate, land valued at $17,000—leaving $18,000 in value of land, to satisfy about $8,000 of debts then incurred ; and the transactions appear, up to that point, free from objection, because, all of his existing debts being paid, the right of the settlor to convey his land could not be questioned by his creditors. But a different appearance was placed upon the transaction by the deed in question being withheld from the record for several years after its execution—it being recorded on the 17th of August, 1878—and in the mean time his debts had increased to $30,340 82, and the wife (the appellant, Mrs. Fannie C. Strayer,) had in the mean time relinquished her contingent right of dower by uniting with her husband in the trust deed in favor of Allen, for $7,000, and in the trust deed in favor of B. P. Newman, for $10,000—the first, May 25, 1876, and the second, August 24, 1876—whereas the deed of settlement was executed, as has been said on the 12th of June, 1875. The decree of the circuit court of Shenandoah county, complained of and appealed from here, in this appeal, which was rendered April 9, 1889, set aside and annulled this settlement as excessive, and as, in so far, fraudulent and void ; and Mrs. Strayer having upon the faith of the

said settlement relinquished her contingent right of dower, the said contingent right of dower was valued by the court at $1,738 77. Joseph B. Strayer waives all supposed errors as to him, but his wife appeals, claiming to have been a purchaser for value of the lands conveyed to her, by the relinquishment of her contingent dower right in all the other lands of her husband; the said relinquishment having been made, not before, but subsequently to, the deed of settlement in pursuance thereof, and in consideration of the same.

The first question arising on this appeal is whether the deed of settlement in question was in excess of the consideration paid therefor, to-wit, the value of the dower interest relinquished. In this case there was not a mere agreement to relinquish, not enforceable against the wife, but an actual relinquishment, on the part of the wife, of her dower rights in all the residue of her husband's lands, in consideration of the settlement in question, under which she now claims. A postnuptial settlement in favor of a wife, made in pursuance of a fair contract for a valuable consideration, will be held good; and, although it may have been made under such circumstances that it must be pronounced fraudulent and void as to the creditors of the husband, yet if the wife has relinquished her interest in the property upon the faith of such settlement, it will be held good, to the extent of a just compensation for the interest she may have parted with. It is well settled that the dower interest of the wife may constitute a valuable consideration, that will support a post-nuptial settlement, and that such settlement, made in consideration of the surrender of such dower interest, may be supported against the claims of creditors; and the fraud of the husband will not affect this, because, as said by Judge Lee, in *William & Mary College* v. *Powell*, 12 Gratt., 387, it would be a sufficient answer to the charge of fraud, on the part of the husband and wife, in executing the deed of settlement, to say that if there were fraud, and she participated in it, still it will not be imputed to her by reason of her overture;

citing *Blanton* v. *Taylor*, Gilmer, 289, and *Taylor* v. *Moore*, 2 Rand., 563, 580. In the *Blanton* v. *Taylor* case, the decision turned upon the consideration that the wife, in the confidence, founded on actual contract with the husband, that she would have a compensation for her dower, had relinquished it; and the fraud was imputed solely to the husband, as otherwise the wife might be irreparably injured. But her privity to the fraud had still the effect of limiting her strictly to an equivalent. See also, *Quarles* v. *Lucy*, 4 Munf., 251.

In order to consider this question with due deliberation, we will remark that the wife's right of dower has priority over all of her husband's contracts or debts, contracted during the coverture. These are all postponed, in all cases, to the wife's claim to dower, which is indefeasible by any act of the husband alone, wherein the wife does not concur. Her title is consummate only on his death; but it has relation to the time of the marriage, and to the seizin which her husband had then, or at any time during the coverture; and it has priority over the debts of the husband, contracted before the marriage, not specifically charged upon the land. Debts due before marriage, specifically charged upon the land, have priority over the dower, with the right in the wife to have her dower served at the expense of the personalty, or the other lands in the hands of the heir, if sufficient. This right of dower is a valuable interest, which she cannot be compelled to resign, and which the law very carefully protects from the control of her husband. When she does part with it, an officer must examine her, apart from her husband, to ascertain whether she does it freely and voluntarily. And, whilst this interest is a valuable right of the wife, it is a corresponding incumbrance upon the land to which it attaches, and, whatever valuation is placed upon it as between the parties, it is binding, and they cannot allege an undue valuation of the same. The wife's release of dower will support a separate provision for her benefit. In *Garlick* v. *Strong*, 3 Paige, 440, Chancellor Walworth said: "It

is well settled that a post-nuptial agreement between the husband and wife, by which property is set apart to her separate use, will be sustained in equity, though void in law.  *  *  * The relinquishment of the dower in this case was a sufficient consideration to support this agreement on the part of the wife as against the husband; * * * although, as against creditors whose debts existed at the time, post-nuptial agreements will not be permitted to stand, beyond the value of the consideration, that principle cannot be applied to this case, which appears to be an attempt on the part of these defendants to defraud the wife of the moneys to which she is equitably entitled under this agreement," which was a note given by the purchaser to a trustee, for the wife, for the amount allowed to her under the arrangement, which was invested in a bond in her name, and afterwards disposed of by the husband. *Sykes v. Chadwick*, 18 Wall., 141, 151; *Harvey v. Alexander*, 1 Rand., 219; *Quarles v. Lacy, supra.*

The question as to the competency of Joseph B. Strayer and Fannie C. Strayer as witnesses, is immaterial. The settlement itself, upon its face, purports to be upon consideration of her surrendering her interest in the other land of the settlor. It is a very different case from that in which the relinquishment of the wife's interest has been first made, and a subsequent settlement sought to be set up. In the latter case, distinct proof of a previous agreement may properly be called for. In a case like this, the subsequent relinquishment, made by the wife, in the other lands of her husband, will be fairly and legitimately intended that it was made in reference to, and on the faith of, the previous settlement, made upon the wife, professedly, in consideration of such conveyance. What need of any specific, independent proof upon this point? And it would be most unjust to disappoint the wife wholly of the settlement on the faith of which she must be supposed to have made her relinquishment, and yet hold her to the latter as valid and obligatory. *William and Mary College v. Powell*,

*supra;* *Taylor* v. *Moore*, 2 Rand., 563; *Lee* v. *Bank*, 9 Leigh, 200; *Harrison* v. *Carroll*, 11 Leigh, 484; *Burwell* v. *Lumsden*, 24 Gratt., 446; *Davis* v. *Davis*, 25 Gratt., 590.

That the wife must be treated as a purchaser for value, in such a case, is not seriously denied; but as to creditors existing at the time the deed of settlement was made, she will be held to the value of the interest relinquished. But in this case, as we have seen above, this deed of settlement was withheld from recordation until the other real estate had been disposed of, and the settlor had contracted debts in the large amounts stated above; and it is this circumstance which imposes upon the wife, in this case, the real hardship of her fate. Our law provides that (sec. 2465, Code of Va.), " every such contract in writing, every deed conveying any such estate or term, and every deed of gift or deed of trust, or mortgage conveying real estate, or goods and chattels, shall be void as to subsequent purchasers for valuable consideration, without notice, and creditors, until and except from the time that it is duly admitted to record in the county or corporation wherein the property embraced in such contract or deed may be." This is a question about which there can be no dispute. Its solution depends upon the true construction of an act of assembly prescribing a general regulation *juris positivi* merely. In such case the courts have nothing to do with the hardship of the case, nor even with the principles of abstract justice. It is a great hardship to the individual that a fair purchaser of lands, for valuable consideration, shall lose the benefit of his purchase because of unavoidable accidents, preventing the attendance of subscribing witnesses or other accidental impediment to the recordation of his deed, yet the case has frequently happened, and, should the party complain of hardship, he would receive for answer, *ita lex scripta est.* The object of the legislature was to prescribe a general regulation and to establish a criterion by which we may know with greater certainty who are the real owners of lands and tenements. For that purpose

the act of assembly in question directs that such contracts and deeds shall be void as to subsequent purchasers for value, without notice, and creditors, until and except from the time that it is duly admitted to record, etc. The motive from which the deed was withheld from record while the process of utter insolvency went on to completion, is not the question. As we have said, the fraudulent intent of the husband, although participated in by the wife (of which there is no proof here), cannot be imputed to her. But the fact exists as to her, and, when she is admitted to the elevated plane of a purchaser for value, she can be placed upon no higher ground, and is bound by this general law as any other person. This deed being then held to be operative as to the creditors of the settlor, only from the time of its recordation as prescribed by law, the settlement appears to be greatly in excess of the value of her dower rights relinquished, it being practically the whole estate of the settlor.

What is the real value of the contingent right of dower relinquished by the aid of modern science is capable of a definite ascertainment, and it is easy to ascertain whether an undue valuation is placed upon it. The rule of computation of the present value of a dower interest is much discussed by the judges and by the able counsel for the appellees, afterwards the judge who delivered the opinion in the case of *Wm. & Mary College* v. *Powell, supra,* and by the reporter, Mr. Conway Robinson, in an elaborate note in the case of *Wilson* v. *Davisson,* 2 Rob., 384, 419. See, however, as to this the table prescribed by law (Code of Va., sec. 2281), prescribing the method by which the present value of an annuity, payable at the end of every year, that a person, at a given age, may be living, for the ages therein stated. But that table and the prescribed rule will not apply to a case like this; that will apply to a case where the party is entitled at the present to an annuity at the end of each year for life; but this is a case where there is only an expectation of an annuity. In the case of an annuity, the

expectation of life being ascertained by the longevity tables, the calculation is simple (2 Rob. Pr., Old, 380); but, where the expectation of life of one party is to be ascertained, and the expectation of death of the other party is to be determined, the question is not determinable by the table in question. If, as is suggested, the expectation of life of the wife is to be ascertained, and the expectation of the life of the husband ascertained, and one subtracted from the other, the result is wholly unsatisfactory to common reason. The two parties may be of equal age, and the result would be nothing, whereas the decisions and reason both concur that in every case the contingent right of dower is a valuable right in the wife and an incumbrance upon the property of the husband, which would hinder, if not prevent, a fair disposition of his real estate for its value. And when the wife is actually older than the husband the result would be the *reductio ad absurdum,* her contingent right of dower being then less than nothing. The other suggestion made in the argument, that the contingent right of dower shall be ascertained by the evidence of witnesses, is one so full of uncertainty, and so opposite to anything like uniformity, that it will probably never be adopted by the courts.

Mr. Minor (2 Inst., 156) says the mode of estimating the value of the wife's contingent dower interest "is a problem more difficult of determination than the value of the life estate of one who is already a widow, since it involves the computation not only of the duration of one life, but the chances of survivorship besides as between the husband and wife. By the aid of the tables of mortality, however, and the calculus of chances, tables have been formed exhibiting the present value of a right of dower of a married woman for every $100 worth of her husband's estate whereof she is dowable, for all probable ages of both parties, thus"—giving a brief extract from the tables referred to, which is taken, as stated, from extensive tables of the description indicated, found in the

American Almanac for 1835, p. 88, referring to *Wilson* v. *Davisson, supra,* which we have seen, and which is applicable to the case of an annuity. In the case of a widow, her interest is readily ascertained, in any given sum, by the method prescribed in the above cited section of the Code of Virginia. But to ascertain the present value of a contingent right of dower, we must calculate by the rules for the ascertainment of the expectation of life of a person; not only the expectation of life of the wife, but the probabilities of their joint lives. If this is terminated by the death of the wife, she gets nothing; if by the death of the husband, her annuity then commences. From the probability of the life of the wife, deduct the probability not of the life of the husband, but the probability of the life of both—and the result is the probability that the wife will be living and the husband dead. And if, from the probability that the wife will be living at the end of each year, we deduct the probability that both will be living, the result is the fraction representing the probability that the husband will be dead and wife living. And so, if, from the present value of an annuity, payable while the wife lives, we deduct the present value of an annuity payable while both are living, the remainder will be the present value of an annuity while the wife survives the husband. The tables in the American Almanac of 1835 have been compiled upon this principle; and they will be found set forth in full in the Quarterly Law Journal, vol. 4, p. 1, published in Richmond, in 1859, where the calculations can be found, illustrating the principles upon which they are based; but these cannot properly find place in our opinion, and we cite them simply. An interesting article by T. B. Sprague, M. A., editor of the "Journal of the Institutes of Actuaries," will be found in the Encyclopedia Britannica, vol. 2, tit. "Annuities." See, also, Bailey's "Life Annuities and Assurances"; De Morgan's paper, "On the Calculation of Single-Life Contingencies," Assur. Mag. 12, 348, 349; Gray's Tables & Formulæ, c. 8; preface to Davies' treatise on Annui-

ties; Headriske's papers in the Assurance Magazine, no. 1, p. 1, and no. 2, p. 12; 4 Assur. Mag., 185; De Morgan's "Account of a Correspondence between Mr. George Barrett and Mr. Francis Bailey." The calculation, in this case, upon the basis of 37 years for the wife and 42 years for the husband, contained an error, as made by the commissioner, which, however, appears to be corrected in the decree rendered; and, if these tables of longevity, or expectation of life, are to be accepted, as they must be, in the absence of anything more simple and satisfactory to the ordinary understanding, there is no error in the decree complained of. But it may be found worthy of consideration by the legislature whether this valuable property right of the wife and incumbrance to the alienation of the property of the husband, might not be fixed by law at a certain proportion in every case, so much on the $100 worth of property, as the present value of a vested dower right, without regard to age—a sum in gross. This was done in *Heyward* v. *Cuthbert*, 1 McCord, 386, by the commissioner, and approved in the case of *Wright* v. *Jennings*, 1 Bailey, 280, in the following terms: "It appeared that the commissioners had assessed one-sixth of the fee-simple value of the estate, which assessment was sustained; and the same rule has generally prevailed since that period, and, I believe, has been approved by experience. We have no table of life annuities in this state [South Carolina]; and if we had, the commissioners usually appointed for the performance of this duty would be very incompetent to apply it to the various cases that might arise. I think, therefore, that we had better adhere to the rule adopted in the case of Mrs. Heyward, except in extreme cases of youth, on the one hand, or of age or infirmity, on the other, in which something, more or less, according to circumstances, may be allowed." The dower interest itself is fixed, by an arbitrary rule, at one-third for life. Being ascertained, its present value might be fixed according to the legislative mind; and possibly the present value of a contingent right of dower to a wife

might be fixed at a proportion definite and certain, which would meet the ends of justice, and save costs to persons worthy of high consideration. We, however, make no departure from established practice in this state, but adhere to the rule usually followed by our courts, and rest upon the tables of longevity, relied on by the circuit court and affirm the decree, it appearing, when so considered, to be without error; which is less a hardship in this case, as the wife has had possession of the estate in dispute for fourteen years since the execution of the deed, without charge.

DECREE AFFIRMED.