# Minge *v.* Green.

*Bill for Specific Performance of Contract.*

(Decided April 11, 1912. 58 South. 381.)

1. *Equity; Pleading; Multifariousness.*—A bill for specific performance of a contract to convey real estate is not rendered multifarious because it also seeks to abate the purchase price to compensate for a dower right incumbrance, in case it is not removed, as this is a mere matter of detail in the adjustment of the relief sought.

2. *Contract; Construction; Ambiguous Terms.*—The ambiguous terms of a contract will be construed in the light of circumstances and of the objects to be accomplished, and against the party who framed them.

3. *Specific Performance; Contract; Description.*—A contract to convey which described the property as a 400-acre farm located about two miles from a designated railroad station, and belonging to the vendor was not too indefinite to be specifically enforced where the vendor owned only one farm of such description.

[Minge v. Green.]

4. *Same; Ambiguity.*—A provision in the contract that the lots were bought "subject to title contract of $200.00," but which did not identify the title contract, was merely descriptive of the title in respect to some encumbrance, and not a provision to be· enforced, and did not render the contract to convey too ambiguous for enforcement specifically.

5. *Same; Partial Performance.*—Where a contract to convey land provided that the title should be good and merchantable, "or the contract void and earnest money to be returned," the purchaser could require performance with an abatement of the price for its value of an outstanding dower right, unless such right was removed.

6. *Same; Deduction for Dower.*—The deduction from the purchase price to which the purchaser is entitled, because of an encumbrance of a dower estate in the land, is not a gross compensation, but is an indemnity against loss by reason of the dower being or becoming an encumbrance.

7. *Same.*—While such deduction is ordinarily in an amount proportionate to the purchase price as the value of the dower to the value of the whole property, yet where the purchase price is payable both in money and in property, it could not exceed that part payable in money.

8. *Same; Purchase Price; Reservation of Interest.*—Where a vendee taking land encumbered with an inchoate right of dower is allowed a deduction from the purchase price to indemnify him against loss, he is chargeable with interest on the amount deducted and reserved, until by the death of ‘the vendor or his wife, the encumbrance is removed, since until the happening of that event, his possession and use cannot be disturbed.

9. *Same; Alternative Relief.*—Where an action is for specific performance of a contract to convey a clear title to land, which is encumbered with an inchoate right of dower, the vendor should be given an opportunity to procure the release of such estate, as an alternative to a part of the purchase price being reserved, to indemnify the vendee against loss.

(Mayfield and Anderson, JJ., dissent.)

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Bill by John H. Minge against P. B. Green to require specific performance of a contract to convey land. From a decree sustaining demurrers to the bill, complainant appeals. Reversed and rendered.

LONDON & FITTS, for appellant. The description is sufficient and while the contract is inartificial, it leaves nothing so obscure as to render it invalid.—*Clements v. Pearce*, 63 Ala. 284; *Chambers v. Bickerstaff*, 69 Ala.

[Minge v. Green.]

140; *Angel v. Simpson*, 85 Ala. 53; *Homan v. Stewart*, 103 Ala. 644; *Webb v. Elyton L. Co.*, 105 Ala. 471; *Cottingham v. Hill*, 119 Ala. 353. The law leans against the destruction of contracts on the ground of uncertainty.—*Boykin v. Bank*, 72 Ala. 262; *Hooper v. Laney*, 39 Ala. 338, and cases cited. Under the contract each party was to pay his own taxes and abstract his own property.—*Robinson v. Bullock*, 28 Ala. 325. Appellant has a perfect right to enforce the contract with the abatement of the agreed consideration because of an outstanding inchoate right of dower.—*Springle v. Shields*, 17 Ala. 295; *Kelly v. Allen*, 34 Ala. 663; note to 10 L. R. A. 117.

SEPSALON & DAVIS, and HENRY UPSON SIMS, for appellee. The contract is too indefinite in many particulars to admit of its enforcement by the courts.—*Shannon v. Wisdom*, 55 South. 102; *Alba v. Strong*, 94 Ala. 163; *Clements v. Pearce*, 63 Ala. 284; *Webb v. Elyton L. Co.*, 105 Ala. 571; *Clement v. Draper*, 108 Ala. 221. Specific enforcement is not obtainable where the wife refuses to make the conveyance, and an abatement in purchase price is not enforcing the contract.—*Thomas v. Deering*, 1 Keen. 729; *Peeler v. Levy*, 26 N. J. L. 330; *McCormick v. Stephany*, 23 Atl. 840; *Martin v. Wharton*, 38 Ala. 637.

SOMERVILLE, J.—The bill was filed to compel specific performance of a contract for the sale or exchange of real estate.

The terms of the contract as to which relief is sought, as exhibited by the bill of complaint, are found in a written memorandum constituting respondent's offer to complainant, and in a letter from complainant to respondent accepting the memorandum offer.

The memorandum and letter are as follows:

"Birmingham, Ala., May 28, 1911. Received of P. R. Green one and no/100 dollars as earnest money and part purchase price of property described, to wit: House and lot No. 3019 Ave. G. subject to one mortgage of $1800.00. 4 houses and two lots 50x190 each W. 1/2 lot 21 and E1/2 lot 22 'Belleview,' subject to one mortgage $2600.00, house and lot on 21st Ave. North, between 25th and 26th streets, and known as U. J. Brown's home, subject to one mortgage of $1600. Also lots 27 and 28, block 15 Rosemont, subject to title contract of $200. Mortgage of $2000 on farm to be conveyed by Green, same to be due in 3 years on or before with interest from date at 8 per cent. this day sold to said Dr. P. B. Green (or assigns) for the price and sum of $10,000; on the following terms:. $1.00 cash, balance and deed to 400-acre farm about two miles from Batelle (a station) on the A. G. S. R. R. The buyer, Dr. P. B. Green, agrees to pay Ben F. Eborn & Harrington one thousand ($1,000.00) dollars as commission for sale of his farm in this deal, with————per cent. interest, deferred payments to be secured by_____. Will pay taxes for the current year and furnish abstract of title to date. Title to be good and merchantable or contract void and earnest money to be refunded. Sale to be complied with thirty (30) days from date. This contract subject to approval of owner. Dr. P. B. Green."

"Dr. P. B. Green, City—Dear Sir: I have just returned from a trip to DeKalb county where I went to examine your place, about two miles out from Batelle. This letter is to notify you that I do hereby approve the contract made with you on May 27th, 1911, and I am ready to close the deal with you in accordance with our contract of the above date. I will prepare the deed for the property you purchased from me, and will be able

to deliver it to you along with abstract of title in a few days. In the meantime please furnish me with abstract of title on your 400 acres of land. Trusting that you will give this your prompt attention, I am, very truly yours, Jno. H. Minge."

The prayer is that respondent be required to convey to complainant the 400-acre farm as specified, free from all incumbrances; or, if a release of the dower right cannot be procured, that conveyance be made subject to that right, with an equitable abatement of the purchase price to the extent of the value of such incumbrance.

Respondent demurred to the bill on substantially the following grounds: (1) There is no equity in the bill; (2) it is multifarious; (3) a necessary party is omitted; (4) the terms of the contract are too vague and uncertain to permit of enforcement; (5) it improperly seeks to explain and enlarge a complete writing by parol evidence; and (6) it shows that the contract is to be void unless the title to be conveyed by respondent is good and merchantable, and yet shows an inchoate dower interest is outstanding.

The chancellor sustained the demurrer as a whole, and the appeal is from that decree.

It is evident that the bill is not multifarious. The prayer is simply for specific performance, and the proposed abatement of the purchase price as compensation for the incumbrance of the land by an outstanding inchoate dower right, in case of its nonremoval, is a matter merely of detail in the adjustment of the relief if granted. It is evident, also, that, as respondent is the only party to the agreement to convey, he is the only proper party to a proceeding for its enforcement.

The chief contentions insisted upon are (1) that the terms of the contract exhibited are too uncertain to per-

mit of specific enforcement, and cannot be aided by parol evidence; and (2) that, in any case, there being shown an outstanding incumbrance, the agreement by its own terms is rendered void and unenforceable.

The property undertaken to be conveyed by respondent, with a "good and merchantable" title, is described as a "400-acre farm about two miles from Batelle (a station) on the A. G. S. R. R., " and is also referred to as "his [i. e., P. B. Green's] farm." In complainant's letter of acceptance he says: "I have just returned from a trip to DeKalb county, where I went to examine your place, about two miles out from Batelle." The bill of complaint avers that at the time this memorandum of the contract was signed by respondent he "owned one 400-acre farm about two miles from Batelle, a station on the Alabama Great Southern Railroad, which was the only 400-acre farm owned by said defendant anywhere, and the only farm of any size owned by the defendant in the vicinity of said station. Said farm is situated in DeKalb county, Ala." That the memorandum description of this farm may be of uncertain application is, of course, apparent. The ambiguity is, however, a latent one, and the description may be made certain in its application to the subject-matter intended by the aid of evidence dehors the writing. "Id. certum est quod reddi potest," is a maxim which has been frequently and liberally applied by this court for the upholding of imperfect descriptions of this character. The intent here was to sell a certain 400-acre farm. It is identified by reference thereto as belonging to the vendor, and as being located about two miles from a designated railroad station. If there is such a farm owned by the vendor, and if he owns but one such farm, and the bill avers these facts, the application of the given description to the subject-matter intended is freed

[Minge v. Green.]

from all uncertainty, and involves no difficulty what-
ever. Indeed, the sufficiency of a description of such a
character as this has been so often affirmed by this court
as to be no longer open to discussion.—*Ellis v. Burden,*
1 Ala. 458; *Baucum v. George,* 65 Ala. 259; *Meyer v.
Mitchell,* 75 Ala. 475; *Angel v. Simpson,* 85 Ala. 53, 3
South. 758; *Homan v. Stewart,* 103 Ala. 644, 16 South.
35; *Cottingham v. Hill,* 119 Ala. 356, 24 South. 552,
72 Am. St. Rep. 923; *Greene v. Dickson,* 119 Ala. 346,
24 South. 422, 72 Am. St. Rep. 920; *Eufaula Nat. Bank
v. Pruett,* 128 Ala. 470, 470, 30 South. 731; *Caston v.
McCord,* 130 Ala. 318, 30 South 431; *Seymour v. Wil-
liams,* 139 Ala. 414, 36 South. 187; *Howison v. Bartlett,*
141 Ala. 593, 37 South. 590.

Speaking of the liberality of this rule, Justice Head
said in *Webb v. Elyton Land Co.,* 105 Ala. 479, 18
South. 179: "The rule we have adopted commends itself
for its conservatism and justice. Howsoever vulnerable
it may be to the attack of technical and refined princi-
ples of law upon the subject of ambiguous writings, we
are not so well satisfied that it is unwise as to be dis-
posed to depart from it. And Justice SHARPE said in
*Caston v. McCord,* 130 Ala. 321, 30 South. 431: "In
this state it has been settled by decisions so numerous
as to establish a rule of property that mere indefinite-
ness in description, though it be such as to render a deed
prima facie inoperative, does not necessarily have that
effect; that evidence of extrinsic facts relative to the
situation of the parties and the circumstances attend-
ing the conveyance may be looked to for the purpose
of identifying its subject-matter; and that it is only
upon the failure of evidence to give certainty to the de-
scription that the instrument will be declared void."
It is the office of the description, not to identify the
land, but to furnish the means of identification. This

we think is accomplished by the memorandum in question, and the averments of the bill are designed only to aid in that result, not, as appellee's counsel argues, to show the intention of the parties as expressed dehors the writing. So far as the other features of the memorandum are concerned, we find nothing which is not readily intelligible and capable of practical enforcement.

Courts are loath to strike down deliberate contract because of supposed uncertainty in any of its terms; and, if any of these terms are ambiguous and prima facie capable of more than one meaning, the court will look to the situation of the parties and the objects they had in view to determine their true meaning. Especially will the court in such cases construe doubtful terms against the party who framed them, and who is offering or undertaking to do the things in question. These are elementary principles, and their application to this memorandum answers every objection made to it. Thus viewed, it is too clear for serious dispute that Green offered to sell his farm to Minge in exchange for four pieces of city property, which were subject to stated mortgage incumbrances, in addition to which Minge was to give Green a mortgage on the farm for $2,000, due and payable in three years, or any date before then at Minge's option, and bearing 8 per cent. interest from the date of the mortgage, which should, of course, be executed when the contract was closed.

The recital that the Rosemont lots were bought "subject to title contract of $200," whatever it may means, suggests no ambiguity in the contract, for it is not a provision to be enforced or given effect in any way. It is merely descriptive of the condition of the title with respect to some incumbrance, and serves to relieve Minge of liability for that condition, whatever it may

be. The recital, "will pay taxes for current year and furnish abstract of title," certainly expresses an obligation on the part of the signer of the memorandum, if of no one else. And the recital, "this contract subject to approval of owner," can only mean the approval of Minge, since Green had already approved, or was then approving, it.

The provision that title is to be good and merchantable, "or contract void and earnest money to be refunded," must be construed as meaning that each party may at his option avoid his obligation to convey his property to the other party, and may decline to receive the other party's conveyance, unless such other party can convey a good and merchantable title to him. But either party may nevertheless stand upon the contract, and require its execution to the extent of the other's ability.—*Weatherford v. James,* 2 Ala. 170.

It only remains to consider the equity of the bill with respect to its alternate prayer for a conveyance of the farm to complainant subject to Mrs. Green's inchoate dower right, with an equitable abatement of the purchase price as compensation for that incumbrance. "Although the purchaser cannot have a partial interest forced upon him, yet, if he entered into the contract in ignorance of the vendor's incapacity to give him the whole, he is generally entitled to have the contract specifically performed as far as the vendor is able, and to have an abatement out of the purchase money for any deficiency in title, quantity, or quality of his estate. This is not making a new contract for the parties since the vendor is not compelled to convey anything which he did not agree to convey, and the vendee pays for what he gets according to the rate established by the agreement."—33 Cyc. 740, 2a. "The usual rule as to specific performance with abatement from the price

is applied in many of the states to the case of a purchase from a married man, whose estate is subject to his wife's inchoate dower right. The purchaser may have specific performance, with a deduction from the price of such sum as represents the present value of the wife's contingent interest, estimated by the usual rules and tables. By the practice in a number of states, instead of making an abatement of a lump sum from the purchase price, estimated as the present value of the wife's inchoate dower interest, the court gives an indemnity to the vendee against such interest. This is generally done by permitting him to retain one-third of the purchase price until the wife dies or releases her dower, and securing its ultimate payment to the vendor or his heirs by mortgage or lien on the land conveyed."—36 Cyc. 744 (11) (111), and numerous cases cited. Whatever may be the rule in some of the other states, this court has long been committed to the rule as above quoted.—*Springle v. Shields,* 17 Ala. 295; *Thrasher v. Pinckard,* 23 Ala. 616; *Kelly v. Allen,* 34 Ala. 663, 670. This rule we think is in accord with reason, and is supported by the great weight of authority, and we have no disposition to depart from it at this late day. The decision in *Spring v. Shields, supra,* cannot be distinguished from the present case on the theory that there the vendor had recovered a judgment for the purchase money against the vendee. We do not conceive that that fact would make any difference, and in *Thrasher v. Pinckard, supra,* no judgment had been recovered by the vendor.

In some instances courts have denied the right of the vendee to have an abatement of the purchase money as compensation for an outstanding inchoate dower interest on account of the uncertainty of its value, and the difficulty of a reliable estimate.—*Cowan v. Kane,* 211 Ill.

572, 71 N. E. 1097. In cases of necessity such a compu-
tation may be made by methods that are well settled.—
*Gordon v. Tweedy,* 71 Ala. 202, 211; *Strayer v. Long,*
86 Va. 557, 10 S. E. 574; 2 Minor's Inst. 156.

In this state it is settled, however, that where the in-
cumbrance is a dower estate, even though already vest-
ed, a gross compensation will not be allowed the vendee
who seeks specific performance, but only an indemnity
against loss therefrom.—*Springle v. Shields,* 17 Ala. ·
295. This indemnity is in contemplation of an actually
vested dower estate, and the amount of the reservation
of purchase money will be measured by the relative
quantum of that estate, as ruled in *Springle v. Shields,*
*supra.* The object in view is merely to indemnify the
vendee against the contingent future assertion of the
dower right, and this will be accomplished by regard-
ing the following rules: (1) The amount of the reser-
vation should be one-half or one-third of the purchase
price, as the wife may presently appear to be entitled
under section 3813 of the Code, prescribing the quantum
of the dower estate. (2) If the dowress expectant die
before her husband, the amount reserved, with legal
interest to that date, should be forthwith paid to the
vendor. (3) If she survive her husband, the amount
reserved falls due upon her death, and is then payable
to the vendor's heirs at law or assigns, with legal in-
terest accruing during the vendor's lifetime only. (4)
The ultimate payment of the amount reserved should be
secured by a decretal order making it a lien on the
land, or else by a mortgage on the land conditioned and
payable as above prescribed, as the chancellor may in
his discretion determine. The foregoing are general
rules. It is evident that there can be no reservation of
purchase money in any case except to the extent that
the consideration is payable in money. The bill shows

that in this case only $2,000 is thus payable, and hence the reservation to be allowed cannot exceed this amount. It will be noted that in *Springle v. Shields, supra,* it was held that the fund reserved was payable on the death of the dowress without interest. But there the dower estate had already vested, and the deprivation of the beneficial use of the land was complete, which is not the case here.

During the vendor's life, the purchaser's possession and use cannot be disturbed, and it would be extremely inequitable to permit the vendee to enjoy the use of both the land and the purchase money at the same time. While he has the land he ought to pay interest on the money. Of course, the court cannot require the wife to execute a release of her dower right, and such is not the purpose of the bill.

Nevertheless, it is proper for the bill to offer to defendant an opportunity to procure a release, if he can do so; and proper also for the court to so shape its decree as to afford such opportunity.

The grounds of demurrer assigned to the bill were not well taken, and the decree sustaining the demurrer was erroneous. That decree will be reversed, and a decree will be here entered overruling the demurrer.

Reversed and rendered.

DOWDELL, C. J., and SIMPSON, McCLELLAN, and SAYRE, JJ., concur. ANDERSON and MAYFIELD, JJ., dissenting.

MAYFIELD, J.—I find myself unable to concur in either the result or the opinion in this case. I desire, and it seems to me that the court needs, some authority to direct the chancellor below to do what it does.

The decision and judgment of this court is that the chancellor ascertain the present value of the inchoate

[Minge v. Green.]

right of dower to which respondent's wife is entitled, and deduct that amount from the purchase price of the farm, as an indemnity, from respondent to complainant, against the wife's ever asserting her dower interest; and when this impossibility is accomplished, and such provision is ingrafted on the contract, that he then decree its enforcement. The problem propounded to the chancellor is this: Ascertain the present value of a given contingency which may never happen, whose ultimate value— that is, its value upon its occurrence—cannot, from the very nature of things be known until it is determined that it has happened; provided, however, its value shall in no event exceed $2,000.

The error into which my Brothers have fallen proceeds from the attempt to apply ancient theories and doctrines, which were applicable to obsolete English common law, but not to modern statutes and conditions. When dower was as certain as death, when it was both possible and proper to say that the greatest legal argument ever offered in favor of the wife's dower was a speech of three words, "coverture, seizin, death," then this decision would have a precedent, however bad it might be. But where modern statutes (as is the case in this state, and has been, since the Code of 1852) have made dower more uncertain than life, and where Toombs' famous speech would not longer be appropriate or effective, this ancient rule and obsolete law has no place in the decisions. As at common law, whether the wife is now entitled to dower depends upon whether she or the husband dies first. Tables of mortality could and did afford a reasonable guess as to this; but, in addition to this uncertainty, there are now added other elements, such as: Which will own the most property at the death of the husband? Will the husband, at his death, be solvent or insolvent? Will they have children

[Minge v. Green.]

or no children? If children, how many? Will he die testate or intestate, and, if testate, what will be the provisions of his will? These are only a few of the subjects of express statutory provision touching the right of dower vel non. How can the chancellor determine which will die first, the husband or the wife? Answer: By mortality tables. If the wife outlive the husband, how long will she outlive him? Answer: Mortality tables will furnish some evidence. To this I agree only because 'ita scripta est lex." This being determined— and it can be determined only as above indicated—then the next question for the chancellor, under the statute, is to determine which will own the more property, the husband or the wife, at the death of the husband. How the chancellor will determine this I do not know. There is certainly no authority or precedent on the subject. If he finds that the husband will own more, then how much more? How this can be determined I do not know; there being upon the point no authority or precedent. If these questions can be determined, then the next question is, Will the husband die solvent or insolvent? If this can be determined, then will he die having children or no children? If having children, how many? If this can be determined, then will he die testate or intestate? If testate, what will be the provisions of his will? If all these thrings can be determined, then will the wife accept, or dissent from, the provisions of the will? These are some of the conditions with which the chancellor is required to comply. How he is to do it I do not know; and the majority furnish no information if such is available. If the common law as to the right and extent of dower prevailed in this state, I concede that there would be some ancient but unsound authority to support the decision in this case; bnt, under our statutory system of dower, I say

no authority can be found in support of it, and that it is impossible to give effect to any decision like this, which can be rendered, in a case like this.

It is insisted that the case of *Springle v. Shields,* 17 Ala. 295, is an authority for the decision in this case. I do not so read or understand that decision. To my mind the dicta are the contrary. The question here decided could not be there decided, because not raised by the pleadings or proof. The vendor husband in that case was dead and the dower had been allotted to his widow, and the suit was against her and the heirs. Notwithstanding this fact, and the further fact that the chancellor abated the purchase price to the extent of this dower interest, which is all that is prayed in this case, and if I may guess, all that the complainant will ever submit to, this court reversed the chancellor, and decreed that he be relieved from payment of that amount until the termination of the dower interest, which was then vested, and of which the widow was in the actual possession. It seems to me that no one can doubt the propriety or correctness of that decision; but how it can be an authority for the decision in this case (which is an attempt to do the impossible) I cannot understand. The opinion cites and quotes from the case of *Parks v. Brooks,* 16 Ala. 529, which decided that an inchoate right of dower was an incumbrance such as would authorize a vendee to rescind; but neither that decision nor the *Parks-Brooks decision* held that he could compel indemnity in a case like the one at bar; the inference being that he could not, or the court would have said so. In the case in 17 Ala. 298, the court cite and quote other Alabama cases, to propositions which, by analogy, clearly show that a decree like the one the court ordered in this case could not be allowed and should not be attempted. Some of the propositions are

as follows: "The dowress may-live to a patriarchal age, she may die the next day, and the assumption that she will live seven years is alike unjust to her and the alienee.' The court, moreover, say they have been unable to find any rule by which the present value in gross of a dower interest may be ascertained.—See *Johnson v. Elliott,* 12 Ala. 112; *Potier & McCoy v. Barclay and Husband,* 15 Ala. 439; *Fry v. Merch. Ins. Co.,* 15 Ala. 810. Now the rule which would make it unjust to the parties to allow a sum in gross to be paid to the widow in lieu of dower in the land would equally seem to forbid that a sum in gross estimated as the supposed value of the dower should be allowed the alienee as against the estate of the vendor. * * * On the other hand, if the dowress be a young woman and should live out her three score years and ten, the alienee might be greatly the sufferer. The uncertainty of such a rule and the impracticability of attaining by its application the justice of the case incline us to eschew it whenever it can be done." Remember, that all this was true, and recognized and stated, before the Code of 1852, which entirely changed our law as to dower and made it uncertain whether it would ever attach, even though the husband was seised, and died before the dowress. If true then, for much greater reason is it true now, when we have no means of even approximately determining, or intelligently guessing, whether the wife will ever be entitled to any dower, though she survive the husband; and, if the right vel non could be guessed at, it certainly could not be intelligently guessed to what aliquot part of the estate—a half, a third, or any other fraction—it attached.

In the case of *Chaney v. Chaney,* 38 Ala. 35, the question of ascertaining the value of the widow's right was before the court. The rule was there laid down; and

the impracticability of ascertaining it before the death
of the husband was referred to. The case was again
considered in the case of *McLeod v. McLeod,* 169 Ala.
660, 53 South. 834, where it is said, quoting in part
*Chaney's Case, supra:* " 'While the rule for the ascer-
tainment and security of the widow's share is thus sim-
ple when the husband is dead, we can very clearly per-
ceive that more difficult questions will be presented for
solution when the court is called upon to lay down a
rule which will secure to the wife of a living husband
her contingent dower interest. We will not anticipate
those questions now, but will leave them to be settled
when they arise.' And it was upon the breakers in-
dicated by that danger signal that this widow's craft
was lost. The inchoate right of dower exists only by
implication of law, and may never become effective.
Figuratively speaking, it is a mere chrysalis, which can
be called into life only by the death of the husband
before that of the wife, and is as completely destroyed
by the death of the wife before that of the husband as
if it never existed. Yet, when it once attaches to the
husband's land, it may confer upon the widow a claim
superior to that of any other person who claims through
the husband by virtue of subsequent acts.—2 Scribner,
Dower; *Cunningham v. Shannon,* 4 Rich. Eq. (S. C.)
140." I do not believe that a single case can be found
in which a decree like the one ordered in this case was
rendered in a state whose dower laws are akin to ours.
It is well known that our Code of 1852 was largely
copied after the New York Code, and the courts of that
state have uniformly decided contrary to the decision in
this case. That court has said: "It was the ancient
practice of courts, where the husband had made a con-
tract similar to the one in question, and the wife refused
to release her inchoate right of dower, to imprison him

until he procured her consent. But that practice has long since yielded to a more humane.rule of law, and the punishment now, if any, is in the nature of damages for nonfulfillment of the contract. It was held in the case of *Roos v. Lockwood* [59 Hun, 181], 13 N. Y. Supp. 128, that where the owner of real estate executes a written agreement to give a deed thereof, which his wife did not sign, and she refused to join in the deed, that it was not proper to decree a specific performance of the contract, either deducting from the. purchase price the actual cash value of such dower interest, or leaving one-third of the purchase money on mortgage at 5 per cent. interest, payable only after the wife's death, as an indemnity against the wife's right of dower. The same rule was adopted in *Talbot v. Adams,* 12 N. Y. Wkly.. Dig. 410. In the case of *Sternberger v. McGovern,* 56 N. Y. 19, Grover, J., in discussing the power of courts of equity to enforce specific performance of contracts, says: 'I have not found any case in this state in which it has been determined in an action for specific performance that a purchaser may compel a vendor unable to procure his wife to release her dower to convey subject to such right, and abate from the price such sum as the court determines was its value.'—*Dixon v. Rice,* 16 Hun. 422; *Martin v. Colby,* 42 Hun. 7. I am of the opinion that it must now be considered the settled law of this state that a court of equity will not compel specific performance of a contract made by the husband to convey land, where it is necessary that the wife join in the conveyance, and she refuses. It is the duty of a person who makes a contract with a married man for the purchase of real estate to see to it that wife execute the contract, and that the title is such that specific performance may be enforced. If he neglects to do so, and relies upon the agreement and representations of

the vendor, knowing that there are outstanding liens and incumbrances upon the property which the vendor may not be able to control, he cannot, under such circumstances, come into a court of equity, and ask the court to make and enforce a different contract than the one entered into. The plaintiffs knew that the defendant was a married man when they executed the contract."—*Bonnet v. Babbage* (Sup.) 19 N. Y. Supp. 935. Mr. Warvelle, in his work on Vendors (volume 2, pp. 892, 893), states the law as follows: "Formerly it seems to have been the practice of courts to specifically enforce such contracts and to require the husband to procure the wife's signature, and imprison him until he did perform his covenant by so doing. The ruling in such cases was based upon the presumption that the husband had, before he entered into the covenant, first gained his wife's consent for that purpose. This doctrine, which is of English origin, has been expressly repudiated by later American cases, and under these decisions specific execution of an agreement to sell and convey will not ordinarily be decreed against a vendor, a married man, whose wife refuses to join in the deed, where there is no proof of fraud on his part in her refusal, unless the purchaser is willing to pay the full purchase money and accept the deed without her joining." —Page 892. "The rule" which "may be considered as the one receiving the highest sanction * * * simply provides that the vendee may have conveyance by the husband's deed, but without the retention of any part of the purchase money to indemnify him against the contingent interest of the wife."—Page 893.

The majority opinion and Cyc. cite Alabama and Virginia as supporting the rule announced. I have, I think, shown that Alabama heretofore has held to the contrary; and I shall now show that Virginia has like-

wise held to the contrary.. In *Clarke v. Reins*, 53 Va. 98, it was decided that: "A court of equity will not decree a specific performance of a contract by a husband and wife for the sale of the wife's land, at the suit of the vendee, the wife refusing to execute the contract. Nor will the court compel the husband to convey his life estate to the vendee, with compensation for the failure of the wife to convey her interest in the land."—Headnotes 2 and 3. "The difficulty of estimating the value of Mrs. Branch's interest, subject to the life estate of her husband, would of itself constitute a serious objection to decreeing compensation for its loss.—*Evans v. Kingsberry*, 23 Va. 120 [14 Am. Dec. 779]. Such an estimate would of necessity be of a speculative character, and whilst there are rules for calculating the value of such interests, which have been adopted by the court in cases rendering such calculations necessary, I feel no disposition to multiply, unnecessarily, occasions for a resort to them."—Page 114 of 53 Va.

Michigan is also cited as supporting the majority decision. Here is what that court said on the subject (*Phillips v. Stauch*, 20 Mich. 382, 383): "In proceeding to give a purchaser something different from that which the vendor contracted to sell, the court is enforcing a contract which the parties never in fact made, and the jurisdiction is therefore to be exercised under many restrictions. It has accordingly been settled that the contract will not be enforced with compensation when a material part of the subject-matter is wanting (Fry on Spec. Perf. §§ 305, 797), nor when a reasonable estimate of the compensation is unattainable for the want of sufficient data (Id. §§ 813, 814); nor when the difference in value of the interest contracted for, and the interest actually to be conveyed is capable of computation (Id. § 303); nor when the alienation of the partial

interest of the vendor might prejudice the rights of third persons in the estate (Id. 304)."

New Jersey occupies a middle ground between Iowa and New York. Its doctrine is that equity will allow or award partial performance and damages or indemnity only in cases of necessity. This rule, I submit, has much of force and reason in it, and, where the common-law rules as to dower prevail, it can and should be enforced; but it could not, of course, be enforced in this state or in New York. The New Jersey rule is thus declared by that court: "Compensation is to be awarded when it appears from a view of all the circumstances of the particular case it will subserve the ends of justice; and it will be denied when, upon a like view, it appears it will produce hardship or injustice to either of the parties. No inflexible rule can be adopted applicable to all cases, but each case must be decided on its own special facts. Generally, it will be denied where the party asking it had notice at the time the contract was made that the vendor was agreeing for more than he could give or convey, and it appears the vendee has not, in consequence of the contract, placed himself in a situation from which he cannot extricate himself without loss."—*Peeler v. Levy*, 26 N. J. Eq. 332. "This rule has the support of the clearest dictates of justice. It is unconscionable for one man to take the promise of another to do a particular thing which the promisee knows, at the time the promise was made, the promisor cannot perform except by the consent or concurrence of a third person, and then, when consent or concurrence is refused by the third person in good faith, to demand a strict and literal fulfillment of the promise. He contracts with full notice of the uncertainty of hazard attending the promisor's ability to perform, and has no right, therefore, to ask the extraordinary aid of a court of

conscience in repairing the loss he has sustained by the nonfulfillment of the contract. He must be content with his ordinary legal remedy."—26 N. J. Eq. 332, 333. So, under the New Jersey rule, the complainant in this case is not entitled to damages, or indemnity, on account of wife's refusal to sign, even if the common law as to dower prevailed in this state.

But, aside from all these authorities, it seems to me that none is needed except our statutes as to dower. I submit that under these statutes it is simply an impossibility for any human agency to approximate the present value of the wife's dower interest in the farm of the respondent. It is, of course, an incumbrance, if the husband alone convey. Opinion evidence of experts, in connection with the tables of mortality, might authorize a judge to guess at the damages this complainant might suffer on account of the breach of contract to convey, or of his warranty, if he conveyed with warranty. The error into which this court has fallen is in supposing that this complainant has, in some manner or form, the absolute right to specific performance, and that this court or the chancellor is bound to grant him specific performance of some contract. That is, if it is a physical impossibility to perform the contract which he made with his eyes wide open, then the court will make a contract as near like the one he did make as possible, and direct the chancellor to enforce it; that he must have specific performance of something, no matter what he or the respondent or the latter's wife losses in the performance. It will be noticed that the majority do not give complainant what he asked, which was specific performance, pro tanto, and damages for partial breach; but in lieu of damages they give him indemnity, and make him pay interest on his own indemnity. The only limitation of the indemnity is that it shall not ex-

ceed $2,000.    Suppose the chancellor fixes it at $2,000,
then the complainant must pay interest on this amount
till the wife signs, or she or the husband dies.    Suppose
the husband and wife both live 50 years, and the wife
dies first, then the complainant will have paid $8,000
as interest and the $2,000 indemnity, making $10,000,
and will get nothing more than he would have gotten
had he taken the deed of the husband alone in the begin-
ning; and, in addition to this loss, the land will have
been tied up by a decree of court and a mortgage for
indemnity for 50 years.    If anything could be more in-
equitable or unjust as to all parties, it would be difficult
to conceive it.    If the chancellor should so order, it
would probably force the complainant to dismiss his
bill.    If the complainant desired to defeat the effect of
the decree, he could convey his property to his wife and
children, and wholly defeat her dower right, by having
less property than his wife upon his death, if he should
die first.    This and hundreds of other conditions will
serve to show the inequity and injustice of the decree
directed by the majority opinion in this case.