ALMON, Justice.
This appeal involves a suit for specific performance of a contract to sell a house. The trial court granted specific performance.
On June 13, 1981, Frank Booke, having seen an advertisement in the newspaper, went to 1305 Cape Road to inquire about purchasing the house at that address. He met Willis Morrison there and entered into negotiations about purchasing the house from Mr. Morrison. After they reached a tentative agreement, Mr. Booke drafted a contract which both he and Mr. Morrison signed. Mr. Morrison had a contract of sale for another house he had purchased, and Mr. Booke copied the first few sentences of it in drafting the contract between himself and Mr. Morrison. In copying from the other contract, Mr. Booke listed both Willis C. Morrison and Gloria J. Morrison as “seller,” even though, according to Mr. Booke’s testimony, Mr. Morrison said title to the house was in his name and Mrs. Morrison “has nothing to do with this house.”
The newspaper ad which Mr. Booke answered quoted a price of $49,500.00 for the house; Mr. Booke testified that Mr. Morrison agreed to accept $5000.00 cash and a $44,500.00 second mortgage. Mr. Booke called his wife, who brought the $5,000.00 cash, and Mr. Morrison accepted it.
Mr. Booke then went to his office, where he had the contract typed. About thirty minutes later, Mr. Morrison arrived and said he wanted another $5,000.00: according to Mr. Morrison’s version, they had agreed to $5,000.00 cash and a $50,000.00 mortgage and the draft agreement failed to reflect this; Mr. Booke’s version was that Mr. Morrison was simply dissatisfied with the bargain. At any rate, Mr. Booke refused to pay the extra $5,000.00, whereupon Mr. Morrison returned the $5,000.00 cash and left. Sometime thereafter, one of the parties suggested a price of $52,500.00; each testified that the other made the offer. Mr. Booke had the contract typed with a purchase price of $47,500.00, both men signed it, and Mr. Morrison took the $5,000.00 cash again. This contract will be referred to hereinafter as the June 13 contract. All of this occurred on Saturday, June 13.
The following Monday, Mr. Booke took the contract to his lawyer, who redrafted it, and after it was signed by Mr. and Mrs. Booke, mailed it to Mr. Morrison. On June 21, Mr. Morrison returned the contract unsigned, stating that his wife refused to sign it, “and that I had to back out on the whole thing.” The previous day he had gone to Mr. Booke’s office and returned the $5,000.00; Mr. Booke refused to accept the money back and asked his boss, John E. Johnston, to hold it in escrow until the matter was resolved.
Mr. Booke filed suit for specific performance of the June 13 contract. Mr. Morrison testified that he had told Mr. Booke all through the negotiations that the contract was contingent upon his wife’s approval. Mr. Booke testified that Mr. Morrison had said only that he wanted to back out because he did not feel right about the deal and that it was June 27 when he first mentioned that he was backing out because his wife refused to sign.
The trial court entered a final decree which included the following:
“The Court finds that Willis C. Morrison, individually, held title to the subject real estate at the time he entered into the contract with Frank Booke on June 13, 1981.
“The Plaintiff, Frank Booke, testified, and the Court so finds, that in a conversation between him and the Defendant, the Defendant said that his wife had no interest in the property and her signature was not necessary to make a binding contract.
“The Defendant put the Plaintiff in possession of the house on June 13, 1981, and agreed to close the transaction not later than August 1, 1981 [these agreements are recited in the June 13 contract].
“It is hereby Ordered, Adjudged, and Decreed by this Court that specific per *1229 formance of the subject contract be and the same is hereby granted as to the real estate in question....
“John E. Johnston is hereby directed to deliver the $5,000.00 cash which he holds in escrow to the Circuit Clerk. The Circuit Clerk shall, upon the appearance and request of Willis C. Morrison deliver over to said Willis C. Morrison the sum of $3,300.00. The remaining balance of $1,700.00, representing his wife’s inchoate dower interest in the subject property, shall be delivered to Plaintiff — Purchasers and retained and held by them until the wife of Defendant releases her dower by request or dies. Should the wife of Defendant die before her husband, the amount so reserved, with legal interest to that date, shall be forthwith paid to Defendant-Vendor. Should the wife of the Defendant-Vendor survive her husband, the amount so reserved falls due upon her death, and is then payable to the Defendant-Vendor’s heirs at law or assigns, with legal interest accruing during his lifetime only. The ultimate payment of this amount shall be secured by this Order of the Court as a lien on the above-described land. Sadler v. Radcliff, 215 Ala. 499, [(111 So. 231)] (1927); Deason v. Dobson, 250 Ala. 396, [34 So.2d (596)] (1948).”
Mr. Morrison argues that the trial court incorrectly granted specific performance because the contract named his wife as a conveying party and did not anticipate the passing of encumbered title, and because the intent of the document on its face makes Mrs. Morrison a necessary and proper party to the contract. The primary case upon which he relies is Jones v. McGivern, 274 Ala. 232, 147 So.2d 813 (1962).
In Jones v. McGivern this Court affirmed a denial of specific performance where the wife, a tenant in common with her husband, refused to sign the contract of sale. Appellant Jones relied upon the rule stated in Deason v. Dobson, cited in the trial court’s decree, supra, and in earlier cases. The Court replied, however, that “[t]he rule quoted above as to protection from the wife’s inchoate dower is not applicable. We are not concerned here with her dower but with her interest as a tenant in common in the fee.” Jones v. McGivern, supra, 274 Ala. at 234, 147 So.2d 813. Cf. Greene v. Jones, 377 So.2d 947, 950-951 (Ala.1979), where the rule that “If a vendor is unable to transfer title to all of the land that he contracted to convey, the vendee, or purchaser, may demand such performance as is within the vendor’s ability,” is contrasted with the rule that
“Where one of several owners of property in common promises to join in a conveyance of a whole with others but does not promise that the others will so join and does not promise that he will convey his own interest separately, it is no breach by him to refuse to convey when the others will not or cannot join.”
See also, Chrisian v. Rabren, 290 Ala. 45, 273 So.2d 459 (1973), and Pearce v. Third Ave. Improvement Co., 221 Ala. 209, 213, 128 So. 396 (1930), where it is observed, “[s]pecific performance pro tanto at the election of the vendee where full performance cannot be had has been a recognized remedy in equity from our earliest judicial history.”
In Minge v. Green, 176 Ala. 343, 58 So. 381 (1912), it was held that the purchaser could require specific performance with an abatement of the price for the value of an outstanding dower right. Minge set out the rule applied in Deason v. Dobson, 250 Ala. 396, 34 So.2d 596 (1948), and in the final paragraph of the trial court’s opinion quoted above.
We hold that the trial court correctly applied the law as stated in Deason v. Dob-son, supra, and the other authorities cited herein. It is undisputed that Mr. Morrison held title solely in his name, and that Mrs. Morrison’s only interest in the property was her inchoate dower interest. The record indicates that her name was inserted simply because Mr. Booke copied it from another contract in Mr. Morrison’s possession. Mr. Morrison relies on the presence of her name in the contract, and the fact that a line for her signature was typed in, to argue that he *1230 signed it with the expectation that a valid contract could not be executed without her signature, but there is ample evidence to support the trial courts finding that Mr. Morrison told Mr. Booke that Mrs. Morrison “had no interest in the property and her signature was not necessary to make a binding contract.” The record further supports the trial court’s finding that Mr. Morrison “attempted to breach or undo the contract” by telling Mr. Booke that Mrs. Morrison refused to sign the contract and by returning the $5,000.00 cash.
The judgment of the trial court is therefore due to be, and is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, EM-BRY and ADAMS, JJ., concur.