ON APPLICATION FOR REHEARING
This Court's original opinion of January 11, 1991, is withdrawn, and the following is substituted therefor.
During the late afternoon or evening of October 6, 1987, Harry H. McAllister and M. Dane Waters entered into a written contract for the sale of a parcel of land, designated as Lot 4, in Mountain Brook, Alabama. Waters had purchased the lot and two others, Lot 3 and Lot 7, the previous day. He had given two mortgages, one secured by Lot 3 and one secured by Lots 4 and 7, on the morning of October 6 to Altus Bank. The mortgage on Lots 4 and 7 was recorded on October 16, 1987. The contract for sale was recorded by McAllister on April 22, 1988.
The contract for sale was sufficient to meet the requirements for filing. It was in writing and was signed by the parties; it adequately described that property; and it was witnessed. It recited that $27,000.00 had been given in consideration for the sale of the land. The terms of the contract were as follows:
 "This is to certify that Harry H. McAllister has given the amount of $27,000.00 to M. Dane Waters of M. Dane Associates. The restrictions and terms of repayment are listed below.
 "1) Harry H. McAllister will be entitled to lot # 4 for $27,000.00 as payment in full. Lot # 4 is located on Rockhill Road in Mountain Brook, Alabama.
 "2) The deed and clear title on lot # 4 will be issued to Harry H. McAllister upon the selling of either lot # 3 or lot # 7 on Rockhill Road.
 "3) The deed shall be issued to Harry H. McAllister no later that June 15, 1988.
"4) Any closing cost will be shared equally.
 "5) M. Dane Associates guarantees that lot # 4 will not be disturbed or changed without approval and will be inspected by buyer prior to closing."
(Emphasis supplied.)
On June 10, 1988, Waters gave a second mortgage to Altus Bank, secured by Lots 3 and 4. Lot 7 had been released. The proceeds of this second mortgage were used to pay off the debt secured by the first mortgages. The second mortgage was recorded on June 14, 1988, and the satisfaction of the first mortgage on Lots 3 and 4 was recorded on October 13, 1988.
Waters did not deliver a deed for Lot 4 to McAllister on June 15, 1988, as stipulated by the terms of the contract; McAllister filed suit on July 11, 1988, to compel specific performance of the contract. On February 23, 1989, Waters filed a bankruptcy petition in the United States District Court for the Northern District of Alabama, naming McAllister and Altus Bank as creditors. The bankruptcy proceedings temporarily stayed the action in the trial court until a relief from stay was granted by the bankruptcy court.
McAllister learned of the second mortgage through the bankruptcy proceedings and, on September 18, 1989, added Altus Bank as a defendant in his action. His amended complaint requested the trial court to do three things:
 "A. [To determine and declare] [t]hat title to the subject real property is vested in the Plaintiff. *Page 1268 
 "B. [To issue a judgment] directing the Defendant, Michael Dane Waters, to execute a deed conveying the said real property to Plaintiff pursuant to the original terms and provisions of contract.
 "C. [To declare] the mortgage payable to Altus Bank as mortgagee . . . subordinate to Plaintiff's interest in said real property."
Waters defaulted on the second mortgage, and Altus Bank foreclosed on the outstanding debt of $45,000.00 on August 18, 1989. Waters filed a motion to be dismissed from this proceeding on February 9, 1990. The motion stated that Waters had no interest in the property and that the remaining unresolved issues involved only McAllister and Altus Bank. Waters was dismissed without objection.
Altus Bank filed a motion for summary judgment, which was granted April 4, 1990. McAllister's motion to alter, amend, or vacate the summary judgment was denied on May 31, 1990, and he now appeals.
McAllister's argument on appeal is that material questions of fact existed as to whether his interest in the property was superior to Altus Bank's. He argues (1) that the evidence shows that Altus Bank was not a bona fide purchaser for value because it had notice of the contract for sale between McAllister and Waters and (2) that the second mortgage was a novation of the first mortgage and therefore was subject to the interest of McAllister.
Altus Bank contends that it is irrelevant whether it was a bona fide purchaser because, it says, Waters's failure to perform under the contract for sale resulted in McAllister's not having legal title to Lot 4. Altus Bank contends that the contract for sale required Waters to transfer clear title. However, title to Lot 4 was not clear on June 15, 1987, because it was burdened by the second mortgage. Altus Bank contends that, because Waters was unable to perform under the contract by transferring "clear" title on June 15, McAllister never received any interest in Lot 4.
McAllister claims an interest in Lot 4 through his contract for sale with Waters, recorded on April 22, 1988, under the provisions of § 35-4-51, Ala. Code 1975. That Section provides that contracts, when executed in accordance with law, can be recorded in the office of the judge of probate, and that the recording of the contract for sale operates as notice of its contents. § 35-4-63, Ala. Code 1975. This recording alone, however, was not sufficient to create a property interest in McAllister.
Under the terms of the contract for sale, Waters was to "issue" a deed to Lot 4 when he sold Lot 3 or Lot 7, but in no event later than June 15. The contract for sale states that if the deed was delivered upon the sale of Lot 3 or Lot 7, Waters was to convey "clear" title. On the other hand, Waters was not required, by the terms of the contract for sale, to convey clear title on June 15, 1988. Therefore, the contract for sale, by its terms, did not prohibit Waters from further burdening the property prior to June 15, 1988.
On June 15, 1988, Waters possessed only an equitable right of redemption in Lot 4; Altus Bank possessed the legal title under the terms of the second mortgage. The debt secured by the first mortgage had been paid off on June 10, 1988, with the proceeds from the loan secured by the second mortgage. McAllister argues that because the second mortgage was given after the contract for sale was recorded, Altus Bank took the second mortgage with notice of the contract for sale. Therefore, McAllister argues that Altus Bank could not be a bona fide mortgagee and that the contract for sale has priority over the second mortgage.
Because the contract for sale was properly recorded, Altus Bank is deemed to have had notice of the contract for sale when it took the second mortgage. See § 35-4-63, Ala. Code 1975. However, the terms of the contract for sale stated that the lot was to be conveyed on or before June 15, 1988, but the contract did not prohibit Waters from encumbering the property. Although Altus Bank had notice of the contract for sale, the notice, by its terms, was insufficient to prevent Altus *Page 1269 
Bank from taking a valid second mortgage on the property on June 10, 1988.
Since the second mortgage had priority over the contract for sale, the issue is what right, if any, did McAllister have in the property? Clearly, on June 15, 1988, McAllister had a right to specific performance of his contract, a contract for the sale of real property that required Waters to make and deliver a deed to Lot 4. On the breach of a contract to convey land, the purchaser is entitled to specific performance of the contract. See Stone v. Gover, 1 Ala. 287 (1840). When the seller does not have complete title, the purchaser is entitled to whatever interest the seller has in the property. N. Hansford, Tilley's Alabama Equity, § 3-9(b) (2d ed. 1985) (citing Morrison v. Booke, 432 So.2d 1227
(Ala. 1983)). However, McAllister's right to specific performance, and therefore his right to assert Waters' right of redemption, was never attained.
McAllister filed suit on July 11, 1988, to compel Waters to perform. He was entitled to Waters's equitable right of redemption in Lot 4 as of June 15, 1988. The equitable right of redemption is a property interest that can be transferred.McGowen v. Williams, 241 Ala. 588, 4 So.2d 164 (1941). McAllister's right to specific performance arose on June 15, 1988, and "a court of equity . . . will give effect to the transaction by fixing status and rights of the parties as if the deed was executed on the date it should have been executed," Copeland v. Warren, 214 Ala. 150, 152,107 So. 94, 96 (1926). Therefore, the trial court could have ordered specific performance and declared that McAllister was the holder of Waters's equitable right of redemption as of June 15, 1988. It did not do so before Waters was dismissed.
Nonetheless, any existing claims by McAllister against Altus Bank to redeem the property were effectively extinguished by the trial court's dismissal of Waters upon his own motion and without objection. All McAllister's claims to Lot 4 were grounded upon his right to have the property transferred as prescribed in the contract for sale. In order to recover against Altus Bank on any theory, McAllister needed a declaration of his right to specific performance of the contract for sale with Waters. No such declaration was issued before Waters's dismissal, and such a declaration is barred without Waters as a party. Waters possessed rights in the property at the commencement of this suit, and no action of the trial court has declared the status of those rights, particularly whether they should have been conveyed to McAllister on June 15. We hold that such a declaration now would be inequitable without Waters before the trial court; therefore, Waters's dismissal cuts off McAllister from any recovery based upon this contract for sale.
For the reasons stated above, the summary judgment in favor of Altus Bank against McAllister is affirmed.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION GRANTED; AFFIRMED.
MADDOX and HOUSTON, JJ., concur.
ALMON and ADAMS, JJ., concur in the result.