# McLeod, *et al. v.* McLeod.

### *Bill for Dower Interest.*

(Decided May 31, 1910. Rehearing denied Dec. 22, 1910.
53 South. 834.)

1. *Executors and Administrators; Actions.*—Where a son died intestate and without issue, and before an administration of the estate of the son, the father conveys his interest to his remaining children, sisters of the decedent, the widow of the father claiming as dowress and not as heir, distributee or creditor of the estate of the decedent, could not maintain a bill against the administratrix of the deceased son to recover dower.

2. *Dower; Conveyance of Husband's Interest; Partition; Rights of Wife.*—The decedent having died intestate and without issue and his father having conveyed his interest in the decedent's estate to his daughters, sisters of the decedent, before administration, and one of the daughters having been appointed administratrix of the estate of her deceased brother, and after paying the debts of the deceased applied for a sale of the land for division and the lands having been sold during the lifetime of the father, and the proceeds distributed equally among the other tenants in common, the widow of the father of the decedent could not maintain a bill against the daughters, sisters of decedent, to recover dower in the sum alleged to represent the share of her deceased husband in the proceeds of such sale, since the dower interest of the widow, she not being an heir, was subject to the right of partition of the ownership of the property in common, whether such partition was effected by conveyances between the co-tenants or by judicial decree or sale, her husband at the time of the sale having no interest either in the land or in the proceeds thereof.

APPEAL from Barbour Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by Julia McLeod against Sallie E. McLeod, administratrix, and others, to impress the proceeds of the sale of certain lands, so far as her husband's share appeared, with the dower interest therein. From a judgment overruling demurrers to the bill respondents appeal. Reversed and remanded.

G. L. COMER and PEACH & THOMAS, for appellant. Dower arises by operation of law and not by force of

[McLeod, et al. v. McLeod.]

any contract express or implied between husband and wife, and the husband having conveyed his interest in the estate, and being still in life when the estate was sold for partition and distribution among the tenants in common, his widow on his death, acquired no right to dower in the proceeds of the previous sale. Her rights were inchoate and never ripened.—*Boyd v. Harrison*, 36 Ala. 533. It is not essential that the wife of the living heir should have been made a party to the partition proceedings.—Sec. 2622, Code 1907. Whatever rights she had were destroyed at the sale of the land, and the purchaser there acquired a perfect title free from any claim of dower.—Sec. 2644, Code 1907; *Lyons v. Cooper*, 94 Ala. 170. Demurrers reached the defect in the bill, and on the above authorities should have been sustained.

A. H. MERRILL & SON, for appellee. The questions involved in this case have been settled adversely to the contention of the appellant in the following cases: *Cheney v. Cheney*, 38 Ala. 35; *Kelly v. Deegan*, 111 Ala. 152. The money for which the lands was sold must be regarded as the substitute for the lands.—*Teague v. Corbett*, 57 Ala. 529; *Steele v. Steele*, 64 Ala. 438; *Hunter v. Lowe*, 68 Ala. 365; *Beard v. Smith*, 71 Ala. 569. The bill was not multifarious.—*Sanders v. Wallace*, 114 Ala. 259, and cases there cited; Sims Ch. Pr., Sec. 259-260. The prayer of the bill does not affect its equity.—*Lyons v. McCurdy*, 90 Ala. 487.

MAYFIELD, J.—One William McLeod had ten children—one son, James, and nine daughters. The son accumulated quite a large estate, and died intestate, single, and without issue. The father, therefore, under our statute as it was at the death of the son, inherited an

undivided one-half interest in the land of the intestate son, and the nine sisters the other half, in equal shares, thus creating the relation of tenants in common among the father and his nine daughters. Before administration of the son's estate, the father conveyed his one-half interest in the estate to his daughters, the other tenants in common. One of the daughters, Sallie, was appointed administratrix of the estate of her deceased brother, and as such, having paid the debts of the estate, applied to the probate court of Barbour county for a sale of the lands for distribution among the heirs of the estate. The lands were thus sold on the 12th day of December, 1906, for the price of $20,000, which sale was made by her as administratrix under the orders of the court, and the proceeds thereof were distributed equally among herself and eight sisters. All this happened during the life of the father, who died intestate on the 9th day of September, 1907, leaving this complainant as his widow (who was evidently not the mother of James), who brings this her suit for dower in a double aspect, seeking, first, to charge Sallie as administratrix as for the whole amount of the dower, in that in her representative capacity she had wrongfully paid over the purchase price to the heirs, in disregard of complainant's inchoate right to dower in the lands or in the proceeds thereof; and, second, to charge each of the heirs equally, as for so receiving and consuming the purchase price in disregard and denial of complainant's dower rights in and to the purchase price of the lands of which complainant was dowable. Respondents demurred to the bill, because of misjoinder of parties respondent, and because of multifariousness. The court overruled the demurrers, from which decree the respondents appeal.

The bill was without equity in so far as it sought to charge the administratrix of James McLeod's estate

with all or any part of the alleged dower interest. The administratrix, as such, was therefore not a proper party to the bill. The complainant does not claim as heir, or distributee, or creditor, of the estate thus administered. She claims as widow and dowress of William McLeod, whose estate is not administered, and as to which the bill alleges an administration is unnecessary. It is true the bill alleges that complainant's husband was an heir and distributee of the estate of his son, which was thus administered; but it also alleges that he was living at the time of the administration complained of, and that he conveyed his interest in the estate to his children, the other heirs and distributees, to whom, of course, the entire proceeds of the administration were properly paid over by the administratrix, according to law, and in pursuance of the orders of the court administering the estate, and to the entire satisfaction of the law and of all parties interested in the estate.

Complainant was not a necessary, or even a proper, party to such administration, and could not have been made such, if so attempted. It would, indeed, be an anomaly, if an administratrix, who had thus discharged all duties according to law, and as directed by the court, and to the satisfaction of all parties interested or concerned in the administration, should nevertheless be held liable to a stranger, whose sole claim is based upon the inchoate rights of dower in the estate of one of the heirs, which was conditioned upon a contingency that might never happen, and against which it was neither the administratrix's duty, nor within her power, to provide. It is conceded by complainant (appellee here) that the sale for equitable division cut off and forever foreclosed complainant's rights as to dower in the lands thus sold; but it is insisted that the dower right immediately attached to the money the purchase price of the

lands, and that it stood in lieu of the lands. The concession is as follows, in brief of counsel for appellee: "We admit that, under and by virtue of the sale of the administratrix for equitable division, the land was cleared of the widow's dower; but the dower, the right and interest, was not lost. It followed the money arising from the sale. The money stood in lieu of the land, charged with the right of dower the same as the land. The money was in fact the land so far as the dower interest is concerned, and those persons who wrongfully took and converted the money virtually took and converted the land. Their act being wrongful, they, having and holding money which ex æquo et bono belongs to complainant, must be made to account to her for it."

This would be true if the husband had died before the sale, and had not sold his interest in the estate—which facts affirmatively appear upon the face of the bill. These facts clearly distinguish this case from that of *Chaney v. Chaney*, 38 Ala. 35, on the authority of which the bill was confessedly filed. The doctrine announced and the language used in *Chancy's Case* have been often followed and quoted by this and other courts, as well as by subsequent text-writers on the subject. The law is so well stated in that case that we cannot do better than quote parts of the opinion: "It is clearly the law that the seisin of a coparcener is such that his widow is dowable in the land held in coparceny. The dower of the widow in the land itself must be, like the descent to the heir, subject to the power of sale, under an order of court, vested in the administrator; for, by statute, the administrator is required to convey all right, title, and interest which the deceased had in the lands at the time of his death. * * * Justice and equity among the heirs, as well as the prescribed terms of the administrator's conveyance, require the conclusion that the right of

dower in the land, on the part of the wives of the heirs, is barred by the administrator's sale. But we cannot conclude that the interest of the dowress is destroyed by such a sale. It would not be destroyed if the heirs were to make a private sale, by mutual consent, for division; nor if a sale for the same purpose were made under a decree of the chancery court. We cannot perceive how a sale, made for the benefit of the heirs, to accomplish the same purpose, in pursuance of the administrator's petition to the probate court, could have the effect of destroying the interest of the dowress. As the wife of an heir is deprived of her claim to a specific charge of her dower upon the land of the ancestor sold by the administrator for division, and as her interest survives the sale, she must, of necessity, be satisfied out of her husband's share of the proceeds of the sale. It was decided in *Williams v. Mason,* 23 Ala. 488, that the money arising from a sale of land would stand in place of the land, and would go, after the purposes of the administration were satisfied, to the heirs. So, also, we think that the proceeds of the sale of the lands must stand to the widow in the place of the land, and she must take an interest in the money equivalent, as near as may be, to her interest in the land. This is very easily arranged where * * * the husband is dead. * * * The widow should be permitted to receive her half (or third) of her deceased husband's share, upon her executing a suitable bond for the protection of those entitled in reversion; and in case of her failure to give bond, the money must be loaned out, and the interest paid over annually to her during her lifetime."

That court, in that case, after discussing the proper channel, made a safe voyage and prepared a chart thereof. It then proceeded to add a note, which was to answer as a bouy or danger signal to future mariners on

that unfathomed sea of legal lore, as to the common-law rights of dower. The note is: "While the rule for the ascertainment and security of the widow's share is thus simple when the husband is dead, we can very clearly perceive that more difficult questions will be presented for solution when the court is called upon to lay down a rule which will secure to the wife of a living husband her contingent dower interest. We will not anticipate those questions now, but will leave them to be settled when they arise." And it was upon the breakers indicated by that danger signal that this widow's craft was lost.

The inchoate right of dower exists only by implication of law, and may never become effective. Figuratively speaking, it is a mere chrysalis, which can be called into life only by the death of the husband before that of the wife, and is as completely destroyed by the death of the wife before that of the husband as if it never existed. Yet, when it once attaches to the husband's land, it may confer upon the widow a claim superior to that of any other person who claims through the husband by virtue of subsequent acts.—2 Scribner, Dower, ——; *Cunningham v. Shannon*, 4 Rich. Eq. (S. C.) 140. The failure of the right to become effective in this case is due to the fact that it attached only to the husband's undivided interest in the lands, and, of course, must have attached subsequent to the paramount right of all the tenants in common, including that of the husband, to partition or sell for the purpose of partition among the several joint owners; and after partition in specie it attaches only to the husband's share; if a sale is made then only to his share of the purchase money. In neither event does it attach to the share of other tenants in common, nor does it prevent or even impede the right to partition by either mode.

It is likewise immaterial whether the partition be effected by the voluntary acts and deeds of all the parties, or whether it be judicially determined at the suit of any one or more of the parties. The result and right of the widow to dower is the same in either case. It is not the judicial proceeding that cuts off the right to dower in land so partitioned or sold for that purpose; nor does such proceeding confer the right to the husband's share so partitioned or sold. It is the fact that the dower right of the widow in such case is subsequent and subservient to the prior and paramount right to partition and to sell for that purpose. So it is wholly immaterial in this case that the husband had sold his share to the other tenants in common, before the judicial sale by the administrator. The result and effect was the same as if he had not so voluntarily sold to his co-tenants, but had continued to own it until the judicial sale and the purchase price had been paid to him, instead of to those who had purchased his share. This exact question was so ruled in the case of *Holley v. Glover*, 36 S. C. 404, 15 S. E. 605, 16 L. R. A. 776, 31 Am. St. Rep. 883, in which case the court said: "The second question involves an inquiry as to the effect of the sale by Alfred Holley to Wise Holley of his undivided one-half of the common property prior to the institution of the proceedings for partition, under which the land was sold to John Holley. It seems to us that the conveyance to Wise Holley placed him in the shoes of Alfred Holley, invested him with the same seisin, subject to the same qualifications, with which his grantor, Alfred Holley, had previously been invested, and made him a tenant in common with the other joint owners of the land. When, therefore, such seisin was divested by sale for partition, the effect, so far as any subordinate right dependent upon such sei-

sin was concerned, was the same as if the title and such
seisin had remained in Alfred Holley. When the basis
upon which the subordinate right of dower rested was
destroyed by the exercise of a right paramount to the
inchoate right of dower, such right necessarily fell with
it, and could not be asserted against one claiming under
a right paramount to it. We are therefore unable to
see how the conveyance by Alfred Holley to Wise Hol-
ley could affect the question which we are called upon
to determine."

These conclusions are further confirmed, if need be,
by a reference to the text-books and adjudicated cases,
as to the effect of execution and foreclosure sales against
the husband, in which it is uniformly decided that such
sales do not terminate the wife's inchoate right to dower
in the lands so sold under judicial process, for the rea-
son that the execution or mortgage lien is not prior or
paramount to the right of dower. The foreclosure of a
vendor's lien, or the sale of lands for partnership pur-
poses, does extinguish the right, or (more accurately
speaking) prevents it from becoming effective, because
prior and paramount to such dower right. See 14 Cyc.
p. 917, C, 2; Id. p. 916, B; Id. p. 903, f, and cases cited
therein. So the question as to whether the inchoate
right to dower is terminated does not depend upon the
question as to whether the foreclosure or enforcement
of other rights is voluntary or involuntary by judicial
proceedings, but whether the other right or lien thus
enforced is prior and paramount to that right of dower.
It is further said in Cyc. (volume 14, p. 915, A) that
"a dower estate partakes of the nature of the estate of
the husband, and will be subject to the same equities
and incumbrances that may exist against the title of the
husband at the time the right of dower attaches." And
in the same book (page 902, d) it is laid down that "a

wife is not entitled at common law to dower in an estate held by her husband as a joint tenant; but she is entitled to dower in estates held by him in common, and in most states the same is now true of estates in joint tenancy under statutes abolishing the right of survivorship and providing that the share of a joint tenant shall go to his heirs, or changing estates in joint tenancy to estates in common. If partition of an estate in common is made during the lifetime of the husband, the wife's dower is limited to the portion set apart to him." Mr. Scribner, in his work on Dower (volume 1, p. 328), says: "The statutes of most, if not all, the states provide for the sale of lands held in common, where, upon proceedings for partition, it is ascertained that a division cannot be made without serious detriment to the estate. In such cases the money arising from the sale is brought into court, and distributed to the several tenants in common in proportion to their respective interests in the common property. From these statute regulations has sprung a question of great interest and importance, namely, whether a sale made in conformity thereto operates to divest the contingent right of dower of the wife of a cotenant, and to pass the entire estate absolutely to the purchaser, and, if so, whether for that reason it is proper that the court under whose direction the sale is made should require a portion of the husband's share of the proceeds of the sale to be invested for her benefit in case she should survive him, and her right thus becomes absolute."

We have shown above, by the authorities quoted, that the first condition of Mr. Scribner's "question of great interest and importance" has since been answered—certainly so, by this court, in *Chaney's Case*, 38 Ala. 35, and now by statute (Code, § 3817). The second condition must be answered by saying, it would be impossi-

ble so to do, under our present laws, common and statutory, as to dower. It would require other statutes similar to those provided in some of the other states; for the reason that, under our present laws, if the husband was living at the time of the sale, it could not be determined without a statute as to whether the inchoate right would ever be effective. If this could be determined, it could not then be determined as to what part of the proceeds should be invested for the wife's benefit—depending, as it does, upon the amount of the wife's separate estate and her distributive share in the husband's estate (and that depending, as it does, upon the number of children), and as to whether his estate is solvent or insolvent, and as to whether he left lineal descendants, none of which conditions could possibly be ascertained until the death of the husband. All of these conditions existed at the time this sale was had in the probate court, and could not have been determined, during the life of the husband, had the probate court had jurisdiction for such purpose—and, of course, it had not. And if the sale had been had in the chancery court, in which this bill was filed, and the wife had been made a party thereto, she would then not have been entitled to the relief herein sought, as against any of these respondents. Any rights she would then have had would have been against her husband alone and his part of the proceeds of the sale; and as the bill shows he was then entitled to no part of the proceeds, and consequently she would have been entitled to none.

It follows that the bill as it now stands shows no rights against any of these respondents, and the demurrer should have been sustained.

Reversed and remanded.

SIMPSON, ANDERSON, and SAYRE, JJ., concur.