(No. 18693.—

AUGUSTE A. RATZMAN, Defendant in Error, *vs.* EDWIN W. RATZMAN *et al.*—(THERESA RATZMAN, Plaintiff in Error.)

*Opinion filed February 20, 1929.*

OTTO W. CHRISTOPHER, for plaintiff in error.

BLECH & HERSON, for defendant in error.

Mr. COMMISSIONER CROW reported this opinion:

The proceeding out of which the questions now presented arose was commenced by Auguste A. Ratzman, defendant in error, against her son, Edwin W. Ratzman, and Theresa Ratzman, his wife, by bill in equity in the circuit court of Cook county. The cause was heard upon the bill,

the answer of Edwin Ratzman and the amended answer of Theresa Ratzman, by a master in chancery to whom the cause was referred to take and report the evidence with his findings of fact and conclusions and to recommend a decree. Objections to the master's report were filed by Theresa Ratzman and all overruled except the first, and they were ordered to stand as exceptions. A decree was entered granting relief substantially as prayed in the bill. The record was taken by plaintiff in error, Theresa Ratzman, to the Appellate Court for the First District by writ of error. Upon suggestion that a freehold is involved that court transferred the cause to this court.

The bill averred, in substance, that complainant, defendant in error here, on November 10, 1913, entered into a contract with Irwin Woodard and wife for the purchase from them of certain real estate described for the sum of $990, $400 of which was paid on delivery of the contract, the balance to be paid in installments of $50 or more per month, commencing December 1, 1913; that on account of her advanced age and infirmity her son, Edwin, who was residing with her and in whom she placed trust and confidence, prevailed upon her to make the contract in his name; that he stated to her that there were many matters to be done with reference to the purchase and consummation of the contract, such as payment of installments, taxes, etc.; that he influenced her to make the contract in his name and relieve herself from the burdens incident thereto; that she was influenced by his representations and consented to make the contract in his name; that she paid $400 in cash and $50 per month, as provided in the contract; that she gave her son all the money due under the contract to Woodard and wife and the receipts were taken by him in his own name; that when the purchase price was fully paid and a deed about to be delivered he promised her that the title would be conveyed to her; that on November 6, 1914, he obtained a warranty deed and she was in-

formed that the deed was in her name and the title conveyed to her, but she has since found that he obtained the title in his name and recorded the deed; that she has at all times been under the impression, and was led by him to believe, that she was the owner of record in fee simple, and, acting on that belief, she paid the original purchase price and all special assessments and general taxes with her own funds and money; that she has since discovered that she is not the owner of record of the premises and that her son misrepresented and defrauded her by taking the title in his name instead of in her name; that he has since pretended to be the owner of the premises; that the deed to him is a cloud on her title and should be declared null and void; that he should be decreed to be the holder of the title in trust for her benefit and to convey to her a good title free and clear of all incumbrances, and upon his failure to so convey that a master in chancery make the conveyance.

Edwin and Theresa Ratzman filed separate answers. Each specifically denied every material averment of the bill. He denied that complainant was under the impression that she was the owner of record in fee simple of the premises or that he ever led her to believe that she was the owner, "but maintains, avers and alleges that she at all times knew that the title to the premises was vested in him;" denied that he was holding the premises in trust for her and denied that she was entitled to the relief prayed.

The answer of Theresa denied not only every fact averred in the bill but denied every conclusion stated. She averred in her answer that in a divorce proceeding brought by her against Edwin he answered her bill with respect to property rights and in his answer stated that he was the owner of the lot in question and at the trial of the divorce proceeding testified, under oath, that he was the owner of the lot; that he and defendant in error, to deprive her of her marital rights, on May 11, 1918, executed and delivered a warranty deed conveying the property to Henry A.

Matthews without a legal or valuable consideration; that on the same day Matthews executed and delivered to complainant and her son a warranty deed conveying to them the property as joint tenants; that complainant has been guilty of *laches* by her long delay in bringing and prosecuting her suit, and with full knowledge of the facts and of her rights failed to prosecute her claim until the lapse of thirteen years. She denied that complainant was entitled to the relief prayed or to any relief.

Edwin Ratzman purchased the property in controversy from Woodard and took the title in his name. The contract for the purchase was evidenced by a writing executed by him and Woodard and wife, dated November 10, 1913. The payments were made as the contract required. The receipts for payments were made to Edwin, except one to Auguste Ratzman. The general taxes were paid by her for the years 1919 to 1925. Special assessments were paid by her for a sidewalk in 1922 and for a paving system in 1925. The receipts show that other special assessments were paid by Edwin in 1916, 1917 and 1918. He and Theresa were married April 29, 1916. On May 11, 1918, he conveyed the property by warranty deed to Henry A. Matthews. On the same day Matthews conveyed it by warranty deed to Edwin and Auguste as joint tenants. Theresa did not join in the conveyance to Matthews. The bill was filed on April 8, 1926, eight years after complainant became the owner of the property jointly with Edwin and twelve years after the deed was delivered to him by Woodard.

As to all matters not of record there is great conflict in the evidence. That the property in controversy was contracted to be sold to Edwin Ratzman is not disputed. Dooley, the agent with whom the sale was negotiated, testified that defendant in error talked with him about it. She made a deposit with him, to be applied on the purchase price, in 1913, but he did not recollect the month. The deposit was $25, and she asked him if it made any difference if the title

was put in her son's name. He said that was all right. She paid the money and the contract was signed. He did not see Edwin until after the contract was made and did not discuss or negotiate the purchase with him. He saw Edwin at his office shortly after the contract with his mother had been signed. The second and third payments were made by Mrs. Gehn, Edwin's sister. Edwin made no payments to him.

Defendant in error testified that she paid $400 cash and got the contract in her son's name, and that she paid the balance in monthly installments of $50 each. It was her money and the son made none of the payments. The deed was in her son's name, and she found that out when she could not sell the lot. She paid taxes in Edwin's name until 1919, when she had the clerk put the property in her name. After the payment of $400 she sent her daughter, Mrs. Gehn, with the payments. Mrs. Gehn got the receipts and put them in witness' tin box at her home. She had the receipts made in the name of E. Ratzman. Her testimony was: "He signed the contract in his name and I bought it in his name. I did not want him to take the title in his name. I wanted it in my name. That is why I had all this trouble about it."

Mrs. Gehn testified that when her brother got the contract which was signed by him he delivered it to his mother. He signed it in her presence. She made all the payments. He had no money. When she had made all the payments he brought the deed home. He had it folded in an envelope and the envelope was sealed. It was not opened until 1918 to see what name was in it, because his mother told him to be sure to have her name put in it. It was in a box up-stairs. When he brought the deed home he did not talk to his mother about it. He handed it to her and said, "Here is your deed; now everything is O. K." His mother took his word for it. He said it was the deed and she did not look at the paper. The first time she looked at the deed

was in 1918—the summer months. A real estate man came and asked who owned the lot. Witness, her mother and Edwin then went to the office of Matthews, a real estate agent. Matthews advised her mother that the son being married, "the only thing to do is to give you half and your son half." She protested and said why should he have half when she paid for the whole thing? Matthews prepared a warranty deed, which Edwin signed, conveying the property to him, and he executed a warranty deed to Edwin and Auguste as joint tenants.

A sister of Edwin corroborated the circumstances of the delivery; that her mother's money paid for the lot, paid the taxes and special assessments, and that Edwin contributed nothing toward any of the payments. Edwin's testimony corroborated that of the other witnesses. He testified that all payments made by him were made with his mother's money; that when he got the deed he handed it to his mother and said, "Here is your title;" that all money ever paid was for his mother with her money. A great many impeaching questions on vital facts were asked, and he was afterward contradicted by Theresa, her mother and her sisters and by other witnesses. His testimony was corroborated by his mother, his sisters and by other witnesses. Radcliffe, representing Dooley, the agent who made the sale of the lot, identified the receipt he gave defendant in error on October 11, 1913, for the initial payment for the property. He gave no receipts for payments to anyone but Auguste Ratzman or Mrs. Gehn, but they were in Edwin's name. At various times and to different persons Edwin stated that he was the owner of the property.

The resume of the evidence relates to the contract, the payments, the deed and the source from which the money was derived. The papers concerning the title were at Auguste Ratzman's home and remained there until Edwin got possession of them and took them to the place where he and his wife were residing, in June, 1916. When he took them

there he said to his wife, "Here is the papers from my lot, and look them over and if anything happens to me you will know about them." In April, 1918, she was taken to the hospital and he took the papers to her mother's home. He told her he did not want his mother to have them. He afterward got them and took them to his mother's home. He testified that his mother found in 1918 that she did not have a clear title to the property and went to Matthews for advice, and the joint tenancy was made. That was after Theresa had filed a bill for divorce.

It is contended that defendant in error's right to assert her title is barred by *laches*. The bill was filed on April 8, 1926. The payments on the lot were completed and the deed to Edwin executed November 6, 1914. Deeds from Edwin to Matthews, and from Matthews to Edwin and Auguste, were executed May 11, 1918. She expressed dissatisfaction with the conveyance that Matthews made. That was a voluntary arrangement in which she acquiesced. There is no pretense that she did not know what she was doing. It appears from the evidence that she did know. In the meantime Edwin had become involved in litigation with his wife, Theresa. She filed a bill for divorce and obtained a decree for alimony. No reason is suggested, and none is apparent from any averment or charges in the bill, why the mother should have relief from the effect of her voluntary act in creating the joint tenancy with her son. The conveyance from which she seeks relief was made long before the joint tenancy arrangement was made. She having acquiesced in that condition of title is now precluded from challenging it. (*Howe* v. *South Park Comrs.* 119 Ill. 101; *Oliver* v. *Ross,* 289 id. 624.) It is not contended that the transaction was fraudulent as to her. The arrangement was made under the advice of one she trusted, to relieve her from the effect of the deed to her son. She knew nothing of the condition of the title when she began the present action that she did not know long before. To allow

her now to prevail on the averments of her bill and the proofs in the record would be inequitable and unjust as against the marital rights of Theresa. It is nothing less than a bill to divest Theresa of her interest in the lots, which is at least an inchoate right of dower. There is no prayer in the bill for any relief against her.

The relief defendant in error sought was from alleged deception practiced on her by Edwin in obtaining the deed in his name from Woodard in 1914. The relief the circuit court decreed was from the conveyance in joint tenancy made to Auguste and her son and accepted by her as an adjustment of the controversy arising out of the first conveyance to him. She was unwilling that the title should remain in her son's name. The deed conveying title to Matthews was deliberately made for the purpose of having the title conveyed to her and Edwin in joint tenancy. The instant the deed was delivered by Matthews to her and her son they became seized of the lot. Theresa was not considered nor asked to joint in the conveyance to Matthews. She had an inchoate right of dower in the property. (*Firebaugh* v. *Wittenberg,* 309 Ill. 536.) She might voluntarily relinquish her rights, but no principle of law or equity authorizes a court of conscience to compel her to convey her rights under the facts proved and averred in the bill.

The decree of the circuit court is reversed and the cause remanded, with directions to dismiss the bill for want of equity.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Crow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*