These three cases concern the intestate distribution of the estate of one Mrs. Oscar (Pinkie) Worley. They were consolidated for purposes of trial and are in the form of a petition for sale for division, a suit for accounting and a claim against Mrs. Worley's estate. In passing upon these claims, the trial judge granted the sale for division and the claim against the estate, specifically denying the request for an accounting. *Page 504 
For the reasons hereinafter set forth, we affirm in part, reverse in part, and remand.
 I
In order to understand the nature of the present suits, it is necessary to focus upon the facts leading up to their independent origins. All relate to the estate of Mrs. Oscar Worley which is largely comprised of farm lands and rental property located near New Hope in Madison County. Much of this real property had been owned by the deceased's husband, Oscar Worley, who had purchased the property over a twenty year period. When Oscar Worley died in 1943, this real estate passed to his three children, W.H. Worley (the appellant), Leonard Worley and Lillian Worley (later Lillian Worley Stimpson), as tenants in common, subject to the dower and homestead rights of Mrs. Worley.
After Oscar Worley's death, Leonard Worley assumed the responsibility of farming the Worley property. Leonard married appellee Lillian Smith Worley and, together with their child, appellee Nancy Lillian Worley, they lived with Mrs. Oscar Worley in the Worley residence. When Leonard died in 1965, he left his one-third interest in the Worley properties to his daughter, Nancy. Both Lillian Smith Worley and Nancy Worley continued to live in the Worley residence and they took care of Mrs. Oscar Worley in her later years.
Mrs. Oscar Worley added to the Worley property holdings in 1968 through the purchase of several adjoining tracts. In that same year Mrs. Worley's daughter, Lillian Worley Stimpson, died and bequeathed to her mother her respective share in the properties previously owned by her father. These real property holdings, plus liquid assets in excess of $70,000, would later comprise the entirety of Mrs. Worley's estate.
In August of 1977, an inquisition was conducted in the Probate Court of Madison County wherein Mrs. Oscar Worley was adjudged to be of unsound mind. The court appointed appellee Lillian Smith Worley as guardian, subject to her filing the proper bond. Mrs. Worley died on January 1, 1978 before any bond was filed and before Lillian Smith Worley assumed her responsibilities as guardian. The appellant W.H. Worley (son) was granted Letters of Administration and immediately removed the administration of the estate to the Circuit Court of Madison County.
On January 30, 1978, the appellant W.H. Worley commenced the first of three suits presently under consideration. He filed a complaint against the appellees requesting the sale of lands, in which they (he and the two appellees) were tenants in common, and a distribution of the proceeds. As defendants to this action, the appellees denied every allegation of the complaint and alleged that the property could be fairly and equitably divided by partition.
On February 26, 1978, the appellant commenced the second action, again naming the appellees as defendants, this time filing a Bill for Accounting or a Bill for Discovery. He contended that the named defendants had occupied a fiduciary relationship to the deceased, being her agent in managing her affairs in the years immediately preceding her death. Furthermore, he contended that an accounting was absolutely necessary in order to have the defendants account for funds allegedly spent on the decedent's behalf during the period in question. No answer was ever filed to this complaint; therefore, the appellant filed a motion for summary judgment on the claim, together with supporting documents and affidavits. No responsive pleading or any other relevant matter was filed with respect to this motion.
The last of the three actions was commenced on July 20, 1978 by J. Robert Miller (the present attorney for the appellees), Nancy Worley and Lillian Smith Worley. Each individual asserted a claim against the deceased's estate. Mr. Miller filed a claim for $1,109.83 for attorney's fees incurred in representing Lillian Smith Worley at the inquisition hearing wherein Lillian was appointed Mrs. Worley's guardian; appellee Nancy Worley claimed $251.06 for utilities and nursing care paid by her on behalf of the deceased; and appellee Lillian Smith *Page 505 
Worley claimed $153,388.02 for goods and services rendered or paid for by her, for and on behalf of the deceased. The latter claim is one based entirely upon principles of implied contract for services rendered in caring for the deceased during the three years prior to her death.
The actions thus set forth were consolidated upon motion by the appellant and were set for trial on March 28, 1979. In addition, the appellant's summary judgment motion was set for hearing concurrently with the trial on the merits. The combined cases, together with the motion for summary judgment, thus proceeded to trial ore tenus.
On June 14, 1979, the trial court entered its judgment granting the sale for division, denying the accounting, denying the claims of Nancy Worley and J. Robert Miller and allowing the claim of Lillian Smith Worley in the amount of $68,104.25. Interest was computed on the judgment in favor of Mrs. Worley so that her final award stands at $73,937.71. After various motions for new trial were denied, an appeal was perfected to this Court.
 II
The preliminary issue raised by the appellant focuses upon the judgment of the trial court in denying his claim for an accounting. The appellant specifically contends that the trial court committed reversible error when it refused to grant summary judgment on the claim. The appellant argues that since the appellees failed to rebut any of the evidence offered in support of the motion, the trial court was required to consider the evidence uncontroverted. It is alleged that in the face of uncontroverted evidence there could be no genuine issue of material fact and no ground supporting the trial court's refusal to grant summary judgment. In addition, the appellant contends that, even assuming that he was not entitled to summary judgment on his accounting claim, he was nonetheless entitled to judgment on the claim on the basis of the pleadings and evidence adduced at trial.
We immediately agree with the appellant concerning the treatment of uncontroverted evidence offered in support of a motion for summary judgment. With regard to the general production of evidence supporting such motions this Court has noted on several occasions that the initial burden of proving the nonexistence of any genuine issue of material fact rests upon the moving party. Ragland v. Alabama Power Co., Ala.,366 So.2d 1097 (1978); Ray v. Midfield Park, 293 Ala. 609,308 So.2d 686 (1975). If the movant successfully bears this burden and shows, by the material on file, that there is lacking any genuine issue of material fact, it then becomes the responsibility of the party opposing the motion to produce evidence to the contrary. Morris v. Morris, Ala., 366 So.2d 676
(1978). If the opposing party fails to do so, the court is left with no other recourse but to conclude that no genuine issue of material fact exists. In this way one can observe how uncontroverted evidence may be taken by a trial court as representing a state of facts which actually does not exist. This is one reason we have held that it is perilous for a nonmoving party to neglect to file evidentiary materials or affidavits in opposition to a motion for summary judgment. Rayv. Midfield Park, supra; Baxley v. Givhan, 292 Ala. 533,297 So.2d 357 (1974).
In reviewing the appellant's motion for summary judgment and the evidentiary materials filed in support thereof, it is readily apparent that he fulfilled the responsibility of establishing the nonexistence of any genuine issue of material fact. As noted previously, the appellees never responded to the motion. No answer or opposing affidavit was ever filed. The trial court was, therefore, faced with a situation in which it had to conclude that no genuine issue of material fact existed; however, this conclusion, in and of itself, was insufficient to justify the entry of summary judgment. Having found that no genuine issue of fact existed, the trial court was still required to go on to determine whether the appellant was entitled to judgment on his accounting claim as a matter of law. *Page 506 
The appellant contends that in order to establish an entitlement to an accounting one need only show the existence of a fiduciary relationship, a compilation of accounts, or the necessity for discovery. This, however, is an incorrect statement of the law. As noted by the trial court in its final decree the several factors alluded to by the appellant represent but the minimum jurisdictional requirements which must be met before an action for an equitable accounting can be maintained. Hall v. McKellar, 155 Ala. 508, 46 So. 460 (1908);Kirksey Motors, Inc. v. General Acceptance Corp., 276 Ala. 270,161 So.2d 475 (1964). See also 1 C.J.S. Accounting § 14 (1936); 1 Am.Jur.2d Accounts and Accounting 851 (1962). Thus, the mere recitation or finding of these factors was not sufficient to justify an order requiring the appellees to account. The appellant was requesting equitable relief based upon his alleged inability to determine or ascertain the degree or character of the appellees' action in managing his mother's affairs. The question is, assuming the fulfillment of jurisdictional requirements, was the appellant entitled in equity, to the relief he requested?
We agree with the trial court that the defendant was not entitled to an accounting because information contained in a previous accounting had already been made available to him. The evidence reveals that a full and complete guardianship accounting had been tendered by Lillian Smith Worley when she was appointed guardian of Mrs. Worley in August of 1977. This accounting involved a complete listing of the services and charges paid by Lillian on behalf of Mrs. Worley, including a computation of the balances of Mrs. Worley's various bank accounts. Furthermore, the appellees were compelled by the court in pretrial discovery to produce and permit the appellant to inspect and copy all documents relating to taxes; all check books and bank statements, together with all canceled checks, and all books of account of Mrs. Worley or any other papers reflecting any accountings relative to Mrs. Worley's business. On the basis of this wide scope of information made available to the appellant, the trial court could have found that he was not entitled to an accounting. For that reason the trial court acted properly in denying the motion for summary judgment.
We reach the same conclusion in determining whether the appellant was entitled to an accounting on the basis of the testimony and evidence presented at trial. In any action for an accounting, it is the responsibility of the trial court to determine the preliminary question of whether an individual is entitled to that relief. Ex parte Cunningham, 270 Ala. 300,118 So.2d 757 (1960). In making that preliminary determination in the present case, the trial court reached a negative conclusion and reasoned thusly:
 In the case at bar testimony at trial included a comprehensive examination and cross examination of the defendant Lillian Worley. Those inquiries covered all phases of her handling of the funds and properties of the deceased. Additionally, pursuant to her guardianship appointment Lillian Worley filed an accounting in Probate Court covering the matter made subject of this suit. An order of this court compelling an additional accounting would only result in a repetition of the testimony in writing and would therefore be a futile act which equity will not compel. Considering all the evidence the court has concluded that the defendant Lillian Smith Worley has as fully and adequately as possible accounted for all funds and properties which came to her possession or control as a result of any fiduciary relationship with the deceased.
In judging the propriety of this decree, we recognize that the trial court heard the "comprehensive examination" of Lillian and examined the evidence ore tenus. As a result, the determinations it made cannot be overturned unless clearly and palpably erroneous or manifestly unjust. Russell v. Russell, Ala., 361 So.2d 1053 (1978). Upon our independent examination of the record we find no such palpable error and, therefore, affirm the lower court decree denying the appellant's suit for an accounting. *Page 507 
 III
The appellant's second argument attacks the trial court's decision that appellee Lillian Smith Worley supported her claim for services rendered on principles of an implied contract. The appellant's basic contention is that the trial court's finding of an implied contract was simply not supported by a showing of clear and convincing evidence.
The trial court was dealing with a situation in which an implied contract was said to exist between members of the same family. This relationship between the parties, i.e., mother-in-law and daughter-in-law, is significant because it raises at least an initial presumption that the services performed were rendered without expectation of payment or reimbursement. It is a well-recognized principle of law that services rendered between near relatives are, in the absence of evidence to the contrary, presumed to be gratuitous. Davison v.Dennis, 176 Ala. 435, 58 So. 401 (1912); Hasty v. Hasty,260 Ala. 90, 69 So.2d 282 (1954). However, the presumption thus raised is not conclusive and may be rebutted upon a showing of facts disclosing a different state of affairs.
In the case of Hasty v. Hasty, supra, the court was dealing with facts strikingly similar to these under consideration. In that case, a daughter-in-law filed a claim against the estate of her mother-in-law for services rendered in caring for her mother-in-law during the years immediately preceding her death. Faced with the proposition and presumption that such services were rendered gratuitously, the court at 260 Ala. 92-93, 69 So.2d 285 (1954), held:
 It is argued by the appellants that there was no proof showing an expressed or implied agreement by the decedent to pay or an expectation on the part of the claimant at the time services were rendered to receive payment for the services. It is contended that the proof at best shows that the services of the claimant were gratuitous and grew out of the family relationship and furthermore that the proof at best indicates a desire on the part of Mrs. T.J. Hasty, deceased, to provide for Minnie Hasty after her death and that there was no charge against her estate for such services. These authorities, however, together with Hyde v. Starnes, 247 Ala. 26, 22 So.2d 421, show that any presumption against an obligation to pay for such services is a rebuttable presumption and that an implied agreement may be inferred and support an action of this kind as between near relatives where the facts and circumstances are such that a mutual intent to pay and to receive pay for such services is a reasonable and just conclusion. [Cf. Duncan v. Johnson, 239 Ala. 183, 194 So. 528 (1940).]
A careful examination of the record convinces us that there was evidence before the trial court from which it reasonably could be inferred that the parties operated under a mutual belief that Lillian would be compensated for her services. Those services were enormous, involving a constant attendance to Mrs. Worley's physical needs. The evidence establishes that Lillian fed Mrs. Worley, bathed her, clothed her, and attended to her other household requirements. She furnished transportation to Mrs. Worley and managed her business affairs. Additionally, several witnesses testified to statements made by Mrs. Worley in which she expressed her intention to repay Lillian for the constant care she was receiving. Lillian responded to these expressions of intent with agreement, stating on one occasion that whatever Mrs. Worley wanted to do would be "agreeable or fine." On the basis of this evidence, it was reasonable to conclude that Mrs. Worley and Lillian Smith Worley operated under a mutual arrangement that Lillian would be paid. The judgment of the lower court on the implied contract aspect was amply supported by the evidence.
 IV
The final argument made by the appellant concerns the portion of the trial court's order which granted a sale for division. The appellant supports the overall correctness *Page 508 
of this ruling but attacks the statement made by the trial court to the effect that appellee Lillian Smith Worley possessed no dower interest in the property being sold. The appellant, W.H. Worley, contends that Lillian had dower rights in some of the land previously owned by her husband's father, and in which her husband owned a one-third undivided interest.[1]
Dower is a life estate of the widow in a certain portion of her husband's real estate, i.e., inter alia, all lands of which the husband was seized in fee during their marriage. Code of 1975, § 43-5-1 (1). The "seisin" required under this statute is sometimes referred to as that of which the husband was "beneficially" seized, Bell v. Killian, 256 Ala. 24,53 So.2d 604 (1951), meaning that the husband's seisin must have been for his own use and benefit. Hamm v. Butler, 215 Ala. 572,112 So. 141 (1927). Seisin may be "seisin in law" or "seisin in fact." That is, there must be either a right to immediate possession or enjoyment of a freehold estate, or an actual possession of such an estate. Eisenberg v. Stein, 222 Ala. 576,133 So. 281 (1931); 28 C.J.S. Dower § 10 at 75.
It has been held that in the case of tenancies in common, each co-tenant is seized of a separate freehold estate, and that the co-tenant's wife is entitled to dower therein. See generally, 28 C.J.S. Dower § 18 at 83. Some of the cases which have reached this conclusion have disclosed facts showing that the co-tenants were "seized in law," no one being in actual possession, Ratzman v. Ratzman, 333 Ill. 461, 164 N.E. 172
(1929), or were "seized in possession," Jenkins v. Strickland,214 N.C. 441, 199 S.E. 612 (1938).
In Chaney's Heirs v. Chaney's Administrator, 38 Ala. 35
(1861), one Emanuel Chaney, being one of the heirs of one Green B. Chaney, died before the sale for division of Green Chaney's land. Emanuel left a widow but no heirs. This Court held that at the time of his death Emanuel was seized of an undivided share of Green Chaney's real estate, his seisin having resulted by descent, and therefore his widow was entitled to dower. "It is clearly the law," this Court stated, "that the seizin of a coparcener is such that his widow is dowable in the land held in coparcenary." The Court went further, however. Emanuel's widow's right to dower in the land was subject to the power of sale for division under an order of court, and because a sale of Green's land had occurred, she was relegated to a dower interest out of her husband's share of the proceeds of the sale for division.
A similar case, McCloud v. McCloud, 169 Ala. 654, 53 So. 834
(1910), recognized the principle of a widow's dower right in a co-tenant's land, but contained distinguishing facts. InMcCloud the co-tenant died after conveying his undivided interest and after the sale for division. It was held in those circumstances that the widow's right was limited to a claim against her husband (his estate) alone, since he was not entitled to any of the proceeds of the sale. In Powell, RealProperty, § 209[1] at 142 it is stated: "Seisin is not present in the reversioner or remainderman who holds subject to an outstanding estate for life. Consequently, dower never attached when the husband's only interest during coverture was such a future interest." The author's footnote explains this statement and its effect:
 This rule had importance when H died survived by W, who thereupon received dower[,] and ownership subject thereto vested in son A who had a wife B. On A's death (in the lifetime of W) B became *Page 509 
entitled to dower in only two-thirds of the lands descended from H. As to the other third, W's outstanding dower prevented A from being seized thereof during coverture. [Emphasis added.]
Carr v. Hart, 232 Ky. 37, 22 S.W.2d 432 (1929) is an illustrative case. One Carr died intestate, leaving a widow and three children. The heirs (and the spouses of the two heirs who were married) conveyed to the widow for her life all of the property which her husband had owned at his death. Several years later, one of the Carr heirs, a son, died leaving a widow and posthumous child who died at eight years of age, and later on Carr's widow died. The other heirs sued to partition the Carr real estate. The widow of the heir claimed a dower interest in an undivided one-third interest in the real estate owned by his father. What that court stated at 22 S.W.2d 434 in connection with her claim is pertinent here:
 During the period between the death of [Carr and the conveyance by his heirs to his widow of a life interest in his real estate,] the heir, as one of the three heirs of [Carr] was beneficially seized of a one-third undivided interest in the real estate left by his father, and had the right to the possession of all that one-third, except the one-third of it that would be included in the dower to which his mother was entitled after assignment to her. He was therefore seized and entitled to the possession of two-thirds of the one-third that he inherited from his father, the other one-third portion of his inheritance being encumbered by the then consummate dower right of his mother, which would become perfected when her dower was assigned, and which would relate back to the time of the death of her husband. To the extent, therefore, of a one-third interest in the one-third that [the heir] inherited from his father, he never had the right of possession . . . so as to . . . entitle his widow to inchoate dower therein.
We conclude therefore that the trial court erred when it held that Leonard Worley was never seized in possession of any of Oscar Worley's property. As a tenant in common of that property he was seized (in law) of an undivided share by descent, and his widow was dowable in his land held in co-tenancy. Leonard had the right to the possession of all of one-third of that land, except the one-third (Code of 1975, §§ 43-5-2 (3)) of it that was included in Mrs. Pinkie Worley's dower. Therefore he was seized and entitled to the possession of two-thirds of the one-third that he inherited from his father, the other one-third portion of his inheritance being encumbered by the consummate dower right of his mother. He never had the right of possession of the one-third interest of his mother in the one-third that he inherited from his father as to entitle his widow Lillian, to dower therein. That one-third which his mother, Pinkie, was entitled to as dower was the "remainder" to which dower would not attach in favor of Leonard's widow, Lillian. Accordingly, those portions of the trial court's order granting the sale for division, the claim against the estate, and denying the request for an accounting, are affirmed. That portion of the trial court's order finding that Mrs. Lillian Worley, widow of Leonard Worley, had no dower interest in the property sold, is reversed, and the cause is remanded for an order not inconsistent with this opinion. It is so ordered.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.
[1] Apparently the appellant, W.H. Worley, is concerned about the dower problem on the ground that any outstanding dower right of Lillian Worley might be a cloud on the title to land sold in the partition suit. Unfortunately the importance of this substantive issue was reflected neither in the briefs of the parties nor during oral argument. The appellant states in brief only that the trial court was wrong "when obviously, she had no [sic] dower rights in the interest that Leonard Worley died possessed of." That conclusion was followed by neither analysis nor citation of authority. The appellee, on the other hand, dismisses the issue as an ore tenus problem for the trial court. As the ensuing observations will disclose, the issue is more complex than either expression. *Page 510